ALFRED W. PUTNAM, trustee in bankruptcy, *vs.* UNITED STATES TRUST COMPANY.

Suffolk.    November 11, 1915. — March 3, 1916.

Present: RUGG, C. J., BRALEY, DE COURCY, & CROSBY, JJ.

*Bankruptcy,* Unlawful preference. *Equity Pleading and Practice,* Findings of trial judge.

Where an insolvent person, who later became a bankrupt, had a deposit and account at a bank, to which he owed money upon notes not then due, and drew out the money by a check payable to the bank and delivered it to the bank to be applied toward reducing his indebtedness, and where the attempted setoff took place within the four months preceding the filing of the petition in bankruptcy, it cannot be ruled as matter of law that there has been a preference, but it must be determined as a fact.

On an appeal in equity, a finding and ruling of the trial judge can be sustained on a ground not adopted by him, and the fact that he stated a wrong reason is immaterial.

In a suit in equity by a trustee in bankruptcy against a bank to recover money alleged to have been paid by the bankrupt to the defendant as a fraudulent preference, it appeared that the bankrupt had procured from the defendant a loan of $10,000 on three notes bearing indorsements of a person of good credit, payable in four, five and six months respectively, that five days later the defendant's president, finding that the genuineness of the indorsements was questioned, informed the bankrupt that he did not want any paper as to the indorsement of which any question was made and demanded that the matter be closed at once by the bankrupt taking up the notes, that the bankrupt acceded to this demand and thereupon drew a check on his account with the defendant for $5,500, which was practically all that he had left there of the $10,000 he had borrowed, and promised to pay the balance due on the notes on that day or the next, that the bankrupt then was insolvent and that about a month later he was petitioned into bankruptcy. The judge who heard the case found and ruled that the defendant was entitled to retain the $5,500 thus paid to it by the bankrupt.

*Held*, that the finding and ruling could be sustained on the ground that the transaction between the defendant and the bankrupt, consisting of the loan and the discount of the notes, was rescinded by the parties.

In the suit above described, it also appeared that, five days after the rescission, the bankrupt brought to the defendant $500, which he deposited with the defendant, that he immediately drew out the same amount by a check payable to the order of the defendant, which was credited to him on one of the notes, and that he made two other similar payments of $500 each in like manner respectively one week and two weeks later. The trial judge found that the defendant had reasonable cause to believe that a preference would be effected in its favor and to its advantage over other creditors of the bankrupt by the payments of the $1,500, and ruled that the plaintiff was entitled to recover this amount. *Held*, that, on the foregoing and other facts disclosed by the evidence, the finding and the ruling of the judge, who had had the advantage of seeing the bankrupt and the officers of the defendant on the witness stand, could not be said to be wrong.

Rugg, C. J. This is a suit in equity by the trustee in bankruptcy of one Mendelsohn, to recover money alleged to have been paid by the bankrupt to the defendant in fraud of the bankruptcy act. The facts briefly stated are that Mendelsohn, a stranger to the officers of the defendant, was introduced to them on December 22, 1911, as one all right to do business with, by his attorney, who was well and favorably known to them. He applied for a loan of $10,000, offering his own notes indorsed by one Tappan. The officers of the defendant, through inquiry of other banks, were assured of the ample resources and credit of Tappan and discounted three notes, for $3,000, $3,500 and $3,500, on four, five and six months' time respectively, made and indorsed by Mendelsohn and apparently indorsed also by Tappan, and the proceeds were credited to Mendelsohn on the books of the defendant. In consequence of notice sent to Tappan according to its custom by the defendant, it was told on December 27, 1911, by the son of Tappan, that his father had indorsed no such notes. Thereupon, the defendant at once sent for Mendelsohn, told him the information received as to the indorsements upon his notes, and asked him to take up the notes at once. Mendelsohn declared the indorsements genuine, and that Tappan was an old friend with whom he had done business and who did not want his family to know about his indorsement of the notes. Mendelsohn offered to go to Attleborough with any representative of the defendant to see Tappan. But he acceded to the demand that the matter be closed up, be-

cause the president of the defendant stated that he did not want paper as to the indorsement of which any question was made, and thereupon gave his check to the defendant for $5,500, the balance left on his account with the defendant being then $21.26, which he said he wanted to have remain to cover some outstanding checks, and promised to pay the balance of the notes on that day or the next. He did not present himself again until January 2, 1912, when he deposited $500 with the defendant and immediately drew a check for that amount to its order which was credited upon one of his notes. This was repeated on January 9 and 16. Mendelsohn was insolvent on December 22. When the three payments of $500 each were made the defendant knew he was insolvent. He was petitioned into bankruptcy on January 27, 1912, and was adjudicated a bankrupt on May 23, 1912.

The single justice * who found these facts also found and ruled that the defendant was entitled to hold the $5,500, that amount being on deposit with the defendant to Mendelsohn's credit and he then owing the defendant a larger sum, and that under these circumstances it was not a preference condemned by the bankruptcy act. This imports a finding of all essential and subsidiary facts necessary to sustain the conclusion reached. Such finding will not be set aside unless it appears to be wrong.

There are two grounds, upon either of which this finding and ruling can stand. The first is that it was the exercise by the parties of the right of set-off. The notes of Mendelsohn, the bankrupt, held by the defendant, although not then due, were provable against his estate in bankruptcy. U. S. St. of 1898, c. 541, § 63 a (1). Therefore, they were subject to set-off under § 68 of the act, and the defendant could have set them off against his deposits. There could be no contention that this could not be done if bankruptcy proceedings had been instituted on December 27, 1911, at the time the transaction as to the $5,500 occurred. *Germania Savings Bank & Trust Co.* v. *Loeb,* 110 C. C. A. 263. *New York County National Bank* v. *Massey,* 192 U. S. 138. Generally, instances of the exercise of the right of set-off have occurred either at the adjudication of bankruptcy or, if before then, when the note of the bank was due or overdue. Statements to the effect that the right of set-off may

---

* *Carroll,* J.

be exercised only when the note has matured are to be found in some of the cases. *Shale* v. *Farmers Bank,* 82 Kans. 649. *Irish* v. *Citizens' Trust Co.* 163 Fed. Rep. 880. It is true that in this Commonwealth there is no right of set-off of an unmatured note even in cases when the other party is insolvent. *Jump* v. *Leon,* 192 Mass. 511, where the cases are collected. But this rule, which sometimes appears harsh in operation, does not prevail in equity in the federal courts. *Schuler* v. *Israel,* 120 U. S. 506. *Carr* v. *Hamilton,* 129 U. S. 252. *North Chicago Rolling Mill Co.* v. *St. Louis Ore & Steel Co.* 152 U. S. 596. It is settled that the time when the right of set-off may be exercised is not restricted to the adjudication, but may be valid, if otherwise unassailable, at any time within the four months before bankruptcy. *Studley* v. *Boylston National Bank,* 229 U. S. 523. In the opinion in that case it was said at page 529: "It cannot have been illegal for the parties on September 12, 20, 30, October 3 and 14 to do what the law would have required the trustee to do in stating the account after the petition was filed on December 16, 1910. No money passed in either instance; for, whether the checks for $5,000 were paid or notes for $5,000 were charged, was, in either event, a book entry equivalent to the voluntary exercise by the parties of the right of set-off. The bankruptcy act recognizes this right and it cannot be taken away by construction because of the possibility that it may be abused. The remedy against that evil is found in the fact that the trustee is authorized to sue and recover if it is shown that after insolvency the money was deposited for the purpose of enabling a bank or other creditor to secure a preference. But to deny the right of set-off, in cases like this, would in many cases make banks hesitate to honor checks given to third persons, would precipitate bankruptcy and so interfere with the course of business as to produce evils of serious and far-reaching consequence." This statement, although used as to rights of set-off exercised at the maturity of notes, seems to be phrased advisedly with sufficient broadness to be equally applicable to the equitable exercise of the right at a time when there is in fact bankruptcy, although not manifested by proceedings in the court. The principle declared is not restricted in its operation to matured notes and in reason seems to be as applicable to cases like the one at bar as to the one there under consideration. It cannot be assumed that the comprehensive

statement of the principle was inadvertent or unconsidered. That principle is that the parties lawfully may do beforehand the exact thing which the law requires to be done when bankruptcy is established. Of course, if done before the bankruptcy, then the question of preference becomes involved and must be determined. But that is a fact ordinarily to be found in the light of all the circumstances. If it is not found that the bank had reasonable cause to believe that the payment of the notes would act as a preference, then the transaction will stand. If between the parties the right of set-off is exercised as to an unmatured note within the four months preceding the petition in bankruptcy, it cannot be ruled as matter of law that there has been a preference, but it must be determined as a fact. This was what was done in *Ridge Avenue Bank* v. *Studheim,* 76 C. C. A. 352, where a similar question was left to the jury. It seems to follow as a necessary result from *Studley* v. *Boylston National Bank,* 229 U. S. 523.

The form in which such set-off is accomplished as between banker and depositor is immaterial. It may be by the giving of a check or by direct method of bookkeeping. That appears to be settled by *Lowell* v. *International Trust Co.* 86 C. C. A. 137, 140, and *Studley* v. *Boylston National Bank,* 118 C. C. A. 435; *S. C.* 229 U. S. 523, notwithstanding *In re National Lumber Co.* 129 C. C. A. 448.

The findings of fact in the case at bar are against the plaintiff, upon whom rests the burden of the proof. It is not necessary to review the evidence. A careful study of it convinces us that the finding that the plaintiff failed to prove that the defendant received the $5,500, having reasonable cause to believe that it would result in a preference, was not wrong.

This finding and ruling of the single justice may also be supported on the ground that the loan and discount of the notes were rescinded. It is immaterial that this was not the reason given by him, if the result thereby may be upheld. *Randall* v. *Peerless Motor Car Co.* 212 Mass. 352, 384. The transaction between the defendant and Mendelsohn on December 27, 1911, appears to have amounted to a rescission of the arrangement for the discount of the notes made five days before, an avoidance of that transaction and a repossession by the defendant of the money credited on its books to Mendelsohn. Such an annulment is a

common law right, and does not depend upon the bankruptcy law. It was not necessary for the defendant to return or tender to Mendelsohn the notes. *Thurston* v. *Blanchard*, 22 Pick. 18. *Donaldson* v. *Farwell*, 93 U. S. 631. *Turner* v. *Ward*, 154 U. S. 618.

The finding of the single justice as to the three subsequent payments by Mendelsohn to the defendant was in these words: "At the time the first $500 was paid, and at the time of the two subsequent payments of $500 each, the trust company knew that Mendelsohn was insolvent. Considering the unusual nature of the transaction, where a depositor opened an account, and a large part of the account consisted of the proceeds of three notes, where indorsements thereon were alleged to be forged; considering the defendant's opportunities for information, and its knowledge of the standing of its customers; that Mendelsohn's place of business was only a short distance away from the place of business of the defendant; the fact that, instead of paying the money directly to the defendant, he deposited the money, and, as part of the same transaction, made out and delivered to the trust company, a check for the identical amount then deposited; that none of the notes were due; that the officers of the trust company were men of more than ordinary prudence and foresight in commercial matters; and from all the facts and circumstances, I find that the defendant had reasonable cause to believe that a preference would be effected in its favor, and to its advantage over the other creditors of Mendelsohn by the payment of this $1,500."

The controlling provision of the bankruptcy law is § 60, the material part of which (as amended February 5, 1903, and June 25, 1910) is: "a A person shall be deemed to have given a preference if, being insolvent, he has, within four months before the filing of the petition . . . made a transfer of any of his property, and the effect of the enforcement of such . . . transfer will be to enable any one of his creditors to obtain a greater percentage of his debt than any other of such creditors of the same class. b If a bankrupt shall have . . . made a transfer of any of his property, and if, at the time of the transfer . . . being within four months before the filing of the petition in bankruptcy . . . the bankrupt be insolvent and the . . . transfer then operate as a preference, and the

person receiving it . . . shall then have reasonable cause to believe
that the enforcement of such . . . transfer would effect a prefer-
ence, it shall be voidable by the trustee and he may recover the
property or its value from such person."

This section requires, as the condition for recovery by the
trustee in bankruptcy against the creditor, three distinct facts:
the bankruptcy, that the transaction then effected a preference
and that the creditor then had reasonable cause to believe that
a preference was being effected. The only serious contention
which can be made in this connection is respecting the last factor,
whether the defendant at the time of receiving these three pay-
ments of $500 each had "reasonable cause to believe" that these
payments would effect a preference.

The governing principles of law upon this point are in sub-
stance that reasonable cause to believe is not the equivalent of
reasonable cause to suspect. The two "phrases are distinct in
meaning and effect. It is not enough that a creditor has some
cause to suspect the insolvency of his debtor; but he must have
such a knowledge of facts as to induce a reasonable belief of his
debtor's insolvency, in order to invalidate a security taken for
his debt. To make mere suspicion a ground of nullity in such a
case would render the business transactions of the community
altogether too insecure. It was never the intention of the framers
of the act to establish any such rule. A man may have many
grounds of suspicion that his debtor is in failing circumstances,
and yet have no cause for a well grounded belief of the fact. He
may be unwilling to trust him further; he may feel anxious about
his claim, and have a strong desire to secure it, — and yet such
belief as the act requires may be wanting. Obtaining additional
security, or receiving payment of a debt, under such circumstances
is not prohibited by the law." *Grant* v. *National Bank,* 97 U. S.
80, 81. *Stucky* v. *Masonic Savings Bank,* 108 U. S. 74. *In re Chi-
cago Car Equipment Co.* 128 C. C. A. 142. *Rosenman* v. *Coppard,*
142 C. C. A. 520, (228 Fed. Rep. 114). Applying this statement of
the law to the evidence, we think the finding of the essential facts
to support recovery by the plaintiff of those three payments is
well warranted. The officers of the defendant were men of ex-
perience in business. Mendelsohn, when confronted with the
information that the son of the man whose name appeared as in-

dorser upon his notes denied the genuineness of the indorsements, promised to bring in the entire amount due to the defendant that day or the next, but did not come in for a week, and then brought only $500. He made no effort beyond his own statement to convince the officers of the defendant that the indorsements were genuine, although the alleged indorser lived in a town not far away. He does not appear to have manifested any concern at the situation. No officer of the defendant visited his place of business, although it was only a few steps away. Although the original discount of the notes appears to have been made chiefly on the financial responsibility of the indorser, no attempts were made, after the cloud was cast upon his liability on the notes by the telephonic message from the son, by the officers of the defendant to ascertain about Mendelsohn, even after his delay in keeping his new promise to make complete payment on that day or the next. It well might have been found that men of ordinary prudence under these circumstances could not fail to have reasonable cause to believe that the payments received by the defendant were preferences. Moreover, the single justice had the advantage of seeing Mendelsohn and the officers of the defendant upon the witness stand and from their appearance in connection with their testimony might re-create in part at least the true situation as it existed on the several dates when these three payments were made.

Since both parties appealed from the final decree, and as no error is shown, no costs are allowed.

*Decree affirmed.*

*Lee M. Friedman,* for the plaintiff.

*A. E. Pillsbury,* (*G. M. Palmer* with him,) for the defendant.