HYMAN KRINSKY, trustee, *vs.* PILGRIM TRUST COMPANY.

Suffolk. January 6, 1958. — April 16, 1958.

Present: WILKINS, C.J., RONAN, WILLIAMS, COUNIHAN, & CUTTER, JJ.

*Bank and Banking. Bills and Notes*, Forgery, Indorsement, Check. *Pleading, Civil*, Answer. *Payment. Evidence*, Admitted without limitation. *Practice, Civil*, Ordering verdict; Demand for admission of facts; Exceptions: whether error harmful. *Error*, Whether error harmful.

A bank crediting to the account of a depositor the amount of a deposited check drawn on another bank and apparently indorsed to his order by the payee, after guaranteeing prior indorsements and collecting that amount from the drawee bank but subsequently refunding it when the drawee bank claimed the signature of the payee was forged and demanded a refund, was entitled, if the signature of the payee was in fact forged, to charge back the amount of the check against the depositor's account without his consent. [405–406]

In an action by a depositor for money had and received against a bank which had charged back against his account the amount of a deposited check drawn on another bank and apparently indorsed to his order by the payee, the defendant under an answer of payment properly might show that it was entitled to apply the credit to the plaintiff's account resulting from the deposit in satisfaction of a claim by it against the plaintiff arising from the fact that the payee's signature had been forged and consequently, after collecting the amount of the check from the drawee, it had refunded that amount to the drawee. [406]

In an action by a depositor for money had and received against a bank which had charged back against his account the amount of a de-

posited check drawn on another bank and apparently indorsed to his order by the payee, the defendant under its answer of general denial and of payment was entitled to introduce evidence that the payee's signature was a forgery and that the drawee had demanded a refund of the amount of the check after that amount had been collected from it by the defendant. [406]

There was no error in a trial judge's refusal to grant the plaintiff's motion for a directed verdict at the close of the defendant's opening. [406]

There was no error at a trial in the admission in evidence, without limitation on its use, of a letter offered by the defendant and admissible for one purpose where the plaintiff made no request to the judge to limit its use to that purpose. [406]

In an action by a depositor against a bank to recover an amount which the defendant had credited to his account upon his deposit of a certified check drawn on another bank and apparently indorsed to his order by the payee and which the defendant subsequently charged back against his account after it had guaranteed prior indorsements on the check, had collected the amount thereof from the drawee, and had refunded that amount to the drawee when the drawee claimed the payee's signature was forged and demanded a refund, it was error for the trial judge to direct a verdict for the defendant since its evidence of forgery of the payee's signature could have been disbelieved by the jury and there was evidence for the plaintiff that the signature was not a forgery. [407]

Hearsay testimony elicited by a party himself was entitled to its probative force against him. [407]

Error on the part of a trial judge in ruling that facts admitted by the defendant under a notice to admit facts filed by the plaintiff pursuant to G. L. (Ter. Ed.) c. 231, § 69, as amended by St. 1946, c. 450, could be controlled by evidence introduced by the defendant, although the judge had not relieved him from the binding effect of the admissions for cause shown, was not prejudicial to the plaintiff where it did not appear that evidence controverting any admitted fact was introduced. [408]

CONTRACT. Writ in the Superior Court dated October 22, 1949.

The action was tried before *Dowd*, J.

*Benjamin Goldman*, for the plaintiff, submitted a brief.

*Francis T. Leahy*, for the defendant.

RONAN, J. This is an action of contract upon an account annexed for money had and received by the defendant to the plaintiff's use. The defendant's answer contains a general denial and an allegation of payment. The case is here upon exceptions to the denial of the plaintiff's motion

for the direction of a verdict in his favor, to the allowance of the defendant's motion for the direction of a verdict, and to divers rulings.

The facts upon nearly all of the issues are supported by documentary evidence and are undisputed, leaving open for decision the principal issue whether the indorsements appearing on three checks payable to one Walker were forgeries.

There was evidence that one John Bready, a depositor in The National Shawmut Bank of Boston, on August 18, 1948, drew three checks on this bank to the order of Walker, who was an automobile dealer in Waltham, for the purchase price of three automobiles. Two checks were drawn for $1,835 each, in payment for two Plymouth automobiles, and a third check was drawn for $2,420 for a Chrysler automobile.

Bready delivered the three checks to one Healy, a municipal employee, who also engaged at times in the sale of automobiles, with instructions to give the checks to Walker and to bring back the automobiles to Boston. On the morning of August 19, 1948, Healy appeared at the office of the plaintiff, who was an attorney and moneylender, and tendered the Bready checks to him. Krinsky held Healy's checks amounting to $5,129.12 which had been dishonored for insufficient funds a few days before, and Healy asked Krinsky to accept the checks of Bready and give him the difference of $960.88. Krinsky examined the three checks and instructed Healy to have them certified by The National Shawmut Bank, hereinafter called the bank, which Healy did, and Healy returned to the plaintiff's office. A statement in the certification which was stamped on the face of the checks read as follows: "Good only if unaltered since issuance and when properly endorsed." On the back of each check appeared the typewritten words "Pay to the order of Hyman Krinsky" underneath which appeared the written words "Mark Walker." After receiving the checks Krinsky gave Healy a check for $960.88. He accompanied Healy to the defendant trust company, told the teller to

pay Healy, and deposited the three checks to his account, indorsing them "Credit to Hyman Krinsky, Trustee." The plaintiff subsequently received a credit of $6,090 to his account at the trust company. The trust company forwarded these checks through the Boston clearing house for collection and on August 20, 1948, it received this amount by way of credit or cash from the bank. The bank in turn cancelled and perforated the checks, charged Bready's account, and returned them to him.

Bready discovered the alleged forgeries in September, 1948, when he received his August statement and learned that the bank had charged him for the amount. Later he met Walker at the bank and saw him sign affidavits that the signatures of the payee were not his and that the indorsements were forgeries. The bank corrected Bready's account and on September 24, 1948, notified the defendant of the alleged forgeries and requested a refund of $6,090. The trust company sent a check to the bank for $6,090 and charged back the amount on Krinsky's account on October 26, 1948. Walker appeared as a witness and testified that the indorsements were forgeries. The plaintiff testified that he did not know Walker, and had no business dealings with him. He gave no reason why Walker should indorse the checks to his order. Healy did not appear at the trial.

There can be no doubt that if the trust company paid money to its customer upon checks bearing forged indorsements the former would have a valid claim based on unjust enrichment because of the mistake of fact. In *Carpenter* v. *Northborough National Bank,* 123 Mass. 66, it was said at page 70, "This is simply the payment of a note to a party who has no legal and no equitable interest in the promise of the maker . . . . The money having been paid by mistake to a person who had no right to demand it, the case is within the general rule, and the party may recover back the amount thus paid." See also *Young* v. *Adams,* 6 Mass. 182. And in *First National Bank* v. *City National Bank,* 182 Mass. 130, which was an action at law by the drawee bank to recover

money paid to a collecting bank on a check bearing a forged indorsement, it was held that the money paid under a mistake of fact could be recovered. See also *Canal Bank* v. *Bank of Albany*, 1 Hill (N. Y.) 287.[1]

It was said in *National Mahaiwe Bank* v. *Peck*, 127 Mass. 298, at pages 300–301, by Gray, C.J., "When he [the depositor] owes to the bank independent debts, already due and payable, the bank has the right to apply the balance of his general account to the satisfaction of any such debts of his." The right of the bank to apply the balance of an account to the satisfaction of such a debt is in the nature of a set-off or of an application of payments rather than a banker's lien. *Furber* v. *Dane*, 203 Mass. 108, 117–118. Thus it was said in *Forastiere* v. *Springfield Institution for Savings*, 303 Mass. 101, 103, quoting from *Laighton* v. *Brookline Trust Co.* 225 Mass. 458, 459–460: "It is well settled that funds on general deposit in a bank are the absolute property of the bank, that the relation between the parties is that of debtor and creditor, and that the bank is entitled to apply the balance of the account due the depositor to the satisfaction of a debt due the bank from the depositor." We see no reason for a difference in result in the instant case where the depository trust company has refunded to the drawee bank the amount of a claim which arose from the payment by the latter on account of a forged instrument. *Howard* v. *Barnstable County National Bank*, 291 Mass. 131. See *Clark* v. *Northampton National Bank*, 160 Mass. 26. Compare *Rossi Bros. Inc.* v. *Commissioner of Banks*, 283 Mass. 114. See also *Furber* v. *Dane*, 203 Mass. 108, 117; *Putnam* v. *United States Trust Co.* 223 Mass. 199; *Laighton* v. *Brookline Trust Co.* 225 Mass. 458, 460; *Prudential Realty Co.* v. *Commissioner of Banks*, 241 Mass. 277, 279; *Forastiere* v. *Springfield Institution for Savings*, 303 Mass. 101. The defendant has such right without the consent of the depositor (*Howard* v. *Barnstable County National Bank*,

---

[1] See §§ 3–417 and 4–207 of the Uniform Commercial Code, which becomes effective October 1, 1958, as c. 106 of the General Laws (see St. 1957, c. 765, §§ 1, 21) which deal with this subject matter.

291 Mass. 131, 138) and the form in which it is accomplished may be by direct method of bookkeeping. *Putnam* v. *United States Trust Co.* 223 Mass. 199, 203. It follows that where a charge back on the defendant's books has been made as in the instant case pursuant to its right to make an application of payments, the facts entitling it to set-off may be shown under a plea of payment. *Durkee* v. *National Bank,* 102 Fed. 845. See also *Adams* v. *First National Bank,* 321 Mass. 693.

Many of the exceptions to the admission of evidence are based by the plaintiff on the defendant's answer. He contends that evidence of forgery is not within the scope of the answer. We think this evidence was admissible.

There was no error in the failure of the judge to grant the plaintiff's motion for a directed verdict at the close of the defendant's opening. *Douglas* v. *Whittaker,* 324 Mass. 398, 399–400. *Perry* v. *Carter,* 332 Mass. 508, 509.

There was no error in the admission of the letter of September 24, 1948, from the bank to the trust company enclosing the three Bready checks with signed affidavits alleging forged indorsements of the payee's name and requesting reimbursement. The letter was essentially a demand for payment and, being admissible for this purpose, if the plaintiff desired to have it so limited he should have so requested the judge. *Perry* v. *Pye,* 215 Mass. 403, 411. *Bouchard* v. *Bouchard,* 313 Mass. 531, 537.

The certified checks had initially been paid by the bank to the defendant as collecting trust company and the plaintiff's account had been more than provisionally credited by the trust company with the collected funds. See *Boston-Continental National Bank* v. *Hub Fruit Co.* 285 Mass. 187, 190–191. When the bank made demand for reimbursement from the trust company because of the allegedly forged indorsements, the trust company met this demand, apparently because satisfied of the merits of the demand and because of its own guaranties of prior indorsements. In turn the trust company sought to enforce by charge back its claim against the plaintiff for breach of the warranties implied in his trans-

fer of the checks to the trust company for collection and deposit. See G. L. c. 107, § 88.[1]

The claim of the trust company was essentially a claim in set-off for breach of the plaintiff's warranties as to which the trust company had the burden of proof, including the burden of proving the essential element showing breach, viz., that the payee's indorsements had been forged. Since even the strong oral testimony that the indorsements had been forged could be disbelieved by the jury, a verdict could not properly be directed for the defendant, for if the affirmative testimony to show forgery was disbelieved, there would be no proof of forgery.

A further reason why it was improper to direct a verdict for the defendant was the plaintiff's testimony that Healy told him that Walker signed the indorsements and that they were not forgeries. This evidence was elicited by the defendant itself and was entitled to its full probative effect. *Faircloth* v. *Framingham Waste Material Co.* 286 Mass. 320, 325. *O'Kane* v. *Travelers Ins. Co., ante,* 182, 184, and cases cited. Even though the judge might have felt that on all the evidence a verdict for the plaintiff would be against the weight of the evidence (see *Hartmann* v. *Boston Herald-Traveler Corp.* 323 Mass. 56, 59–60) the statement made by Healy to the plaintiff was sufficient to entitle him to go to the jury on the question whether the indorsements were forged. *DuBois* v. *Powdrell,* 271 Mass. 394. *Pochi* v. *Brett,* 319 Mass. 197, 203. *Eastern Paper & Box Co. Inc.* v. *Herz Manuf. Corp.* 323 Mass. 138, 143. *Pataskas* v. *Judeikis,* 327 Mass. 258, 260. *Poulin* v. *H. A. Tobey Lumber Corp., ante,* 146.

The plaintiff submitted a notice to admit facts under G. L. (Ter. Ed.) c. 231, § 69, as amended by St. 1946, c. 450. The plaintiff saved no exception to the ruling permitting the defendant to read to the jury two items which were included in the admission of facts but which the plaintiff omitted to read, although the plaintiff did subsequently save an excep-

---

[1] See Uniform Commercial Code, §§ 3–417 (2); 4–207 (1); 4–212 (1); 4–213.

tion to the explanation by the judge of this ruling. The judge was wrong in explaining his ruling, as he did, that the facts admitted under the notice could be controlled or overcome by the defendant. The facts admitted pursuant to § 69, as thus amended, are binding upon the defendant and cannot be controverted by it unless it is relieved therefrom by the court for cause shown, which was not done here. The principles stated in *Gordon* v. *American Tankers Corp.* 286 Mass. 349, 353–355, are no longer applicable in view of the 1946 amendment of § 69. See 30 Mass. L. Q. No. 4, page 57; 1946 House Bill No. 711; 1946 House Journal 1231–1232. However, no instance is pointed out of any specific respect in which evidence controverting any of the admitted facts was introduced and the plaintiff does not appear to have been prejudiced by the erroneous ruling of the judge.

The plaintiff took no exception to the ruling of the trial judge in permitting the defendant to introduce those parts of the notice to admit facts and the admissions of those facts which the plaintiff did not himself introduce. Obviously, no exception having been taken, we need not consider the point.

As there was error in directing a verdict for the defendant, the exceptions must be sustained.

*So ordered.*