ALFRED D. KING's (dependent's) CASE.

Suffolk.    April 5, 1967. — May 1, 1967.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER,
& REARDON, JJ.

*Workmen's Compensation Act,* Injuries to which act applies. *Proximate Cause. Evidence,* Opinion: expert.

A finding in a workmen's compensation case that the death of an employee from cancer which had originated in his pancreas and spread metastatically to other parts of his body was causally related to an injury sustained to his left side and back when he fell off a truck while at work many months earlier was not warranted, even though the employee suffered a generally constant deterioration of health after the accident and the symptoms of his injury and the cancer partially coincided, by the opinion of a physician called as an expert which was not supported by clinical evidence and which expressed no more than a mathematical likelihood that the employee's death was causally related to the accident.

CERTIFICATION to the Superior Court of a decision by the Industrial Accident Board under the Workmen's Compensation Act.

The case was heard by *Chmielinski,* J.

*Edmund Z. Dymsza* for the insurer.

*Edward C. Uehlein* for the claimant.

SPALDING, J.    The facts in this workmen's compensation case are not disputed.    The employee, Alfred King, was a truck driver for Hager's Ice Cream Company.    On April 13, 1959, while so employed, he fell off a truck and injured his left side and back.    He went immediately to the company physician who strapped his back.    The next day he returned to work and continued working until December, 1959. During that period, however, he experienced pain in his back and left flank.    Beginning in September he visited several physicians but none of the various treatments he received alleviated the pain.    He became nervous and irritable, lost his normal appetite, and was unable to sleep well. By December the increasing pain made it difficult for him to walk or hold his body erect.

The employee stopped working in the middle of December. He was referred by the insurer to a physician and was hospitalized in General Hospital, Somerville, on December 29. A chest X-ray taken the next day revealed a linear streaking in his left lung. Several months later he was taken to the Massachusetts General Hospital. On March 25, 1960, a section of his lung was removed, and a definite diagnosis of cancer was made. Treatment was unsuccessful, and the employee died in a rest home on August 25, 1960. The cause of death was determined to be cancer which had originated in his pancreas and spread metastatically to other parts of his body.

The employee's widow brought this claim for compensation, alleging that her husband's death resulted from his fall from the truck.[1] The single member dismissed the claim, finding "that the claimant . . . failed to sustain the burden of proving that her husband's death was causally related to his industrial accident."

The reviewing board made findings of its own and reversed the decision of the single member. The board found "that at the time of his injury in April 1959 the employee had a cancer of the pancreas area . . . which had not metastasized at that time; that in the fall he suffered an injury to the area of his pancreas which dislodged some cancer cells; . . . [and] that the fall set in motion a process of the cancer cells metastasizing to the lungs and other parts of the employee's body which caused this continual pain and gradual downhill course generally and, eventually, his death." Upon certification to the Superior Court a decree was entered in accordance with the board's decision. The insurer appealed.

The basic question is whether the evidence supported the findings that the employee's death was causally related to his industrial accident. The facts that the employee suffered a generally constant deterioration of health after the accident, and that the symptoms of his injury and the can-

---

[1] The widow-claimant died on October 30, 1964, and the administrator of her estate was substituted as claimant.

cer partially coincided, do not, standing alone, support the findings of causation. "[W]here such causal relation is a matter beyond the common knowledge and experience of the ordinary layman, proof of causation between the injury and the ensuing death must rest upon expert medical testimony." *Sevigny's Case,* 337 Mass. 747, 749, and cases cited.

The only medical testimony supporting the findings of causation was that of Dr. Elliott L. Sagall, a specialist in internal medicine and cardiovascular diseases. Dr. Sagall had not treated the employee and based his testimony upon the medical records. He testified "that this situation was one where an individual, previously symptom free and able to work, suffered a severe blow in an area over an organ which was later shown to have cancer and . . . his course after the injury indicated progressive difficulty, with spread of the cancer. On this basis, it is my opinion that it is likely that the injury itself, hitting a previously cancerous area, promoted metastasis and hastened his death." He further stated that in his opinion the "death was hastened by the injury, either as [a] direct result of the blow, affecting the pre-existent cancerous tissue, causing it to spread more rapidly and sooner than it ordinarily would have locally and also metastatically and that the continued pain, nervousness, irritability and other bodily reactions to the pain in his back lowered his general bodily resistance and thereby contributed further to the spread of this carcinoma."

Dr. Sagall's opinion was based upon alternative theories. The first — that the force of the fall directly affected the pre-existent cancerous tissue of the pancreas and thereby hastened metastasis — is the basis of the challenged findings.[2] This theory was based upon three assumptions, each of which was adopted by the reviewing board: that cancer was present in the employee's pancreas prior to the acci-

---

[2] The board made no finding based upon the alternative theory that the employee's injury lowered his bodily resistance and thereby contributed to the metastasis.

dent; that the accident disturbed the pre-existent cancerous tissue;[3] and that such disturbance hastened the metastasis. On cross-examination Dr. Sagall conceded that none of these assumptions was directly supported by clinical evidence. He agreed that cancer was not diagnosed definitely until the operation on March 25, 1960, and that the first clinical suggestion of cancer was the X-ray taken on December 30, 1959, which revealed a streaking in the left lung. When asked whether it was possible that the cancer had originated at some time after the accident, Dr. Sagall answered, "This would be unusual in view of the . . . wide spread metastasis; the size . . . and the spread indicate it has probably been present for years . . . ." Q. "Do you mean to say that . . . cancer doesn't spread rapidly sometimes?" A. "I didn't say that." Q. "Conceivably this cancer could have started between those two dates and spread rapidly . . . ." A. "This is conceivable; I answer in terms of likelihood." Dr. Sagall also agreed that there was no indication in the records that the accident had caused any injury or trauma to the pancreas. He conceded that "[t]he cause of cancer in many instances is still unknown today." Nowhere in his testimony did he point to any positive evidence in the records which, assuming a cancerous pancreas and a blow affecting it, would substantiate the conclusion that the spread of the cancer was thereby hastened.

There are limits to the probative value of expert opinion. It "will be disregarded where it amounts to no more than mere speculation or a guess from subordinate facts that do not give adequate support to the conclusion reached." *Sevigny's Case,* 337 Mass. 747, 751, and cases cited. *Oberlander's Case,* 348 Mass. 1, 7. We think that Dr. Sagall's opinion, given maximum weight, expressed no more than a mathematical likelihood that the employee's death was causally related to his accident. But as we said in *Sargent* v. *Massachusetts Acc. Co.* 307 Mass. 246, at p. 250, "It . . .

---

[3] Although the board's finding contained the phrase "dislodged some cancer cells," which was not used by Dr. Sagall, we assume the expression to be a paraphrase of the doctor's first alternative.

[is] not enough that mathematically the chances somewhat favor a proposition to be proved . . . .   [T]hat proposition is proved by a preponderance of the evidence if it is made to appear more likely or probable in the sense that actual belief in its truth, derived from the evidence, exists in the . . . minds of the tribunal . . . ."   *Tartas's Case,* 328 Mass. 585, 587, is to the same effect.

We are of opinion that the decision of the reviewing board was lacking in evidential support and cannot stand. The decree is reversed and a new decree is to be entered dismissing the claim.

*So ordered.*