JOYCE LYNCH *vs.* LAWRENCE EGBERT.

Suffolk.    May 4, 1971. — June 30, 1971.

Present: TAURO, C.J., SPALDING, CUTTER, QUIRICO, & BRAUCHER, JJ.

*Doctor. Negligence,* Doctor. *Proximate Cause. Evidence,* Opinion: expert. *Assault.*

At the trial of an action for alleged injuries sustained by the plaintiff from an intravenous injection of an anesthetic administered by the defendant, an anesthesiologist, the evidence disclosed no departure from accepted medical practice by the defendant, and, apart from an opinion of an expert which must be disregarded as mere speculation, disclosed no causal relationship between any act of his and a "clawed hand" of the plaintiff, and required direction of a verdict for the defendant on a count for negligence [92]; the plaintiff's initial consent to the insertion of the needle required direction of a verdict for the defendant on a count for trespass to the person, and a negative answer by the jury to a special question, whether the defendant persisted in the administration of anesthesia after a request by the plaintiff that he not continue, required direction of a verdict for the defendant on a count for assault and battery [92–93]

TORT.    Writ in the Superior Court dated May 23, 1966.

The action was tried before *Kalus,* J.

*Maurice H. Kramer* for the plaintiff.

*Lionel H. Perlo (Jacob J. Locke* with him) for the defendant.

TAURO, C.J.    The plaintiff brought an action in tort alleging that she sustained injuries which resulted from an intravenous injection by the defendant.  She seeks recovery on counts for (1) negligence, (2) trespass to the person, and (3) assault and battery.  The court directed verdicts on counts 1 and 2.  With respect to count 3 the court submitted the following special question to the jury.  "Has the plaintiff satisfied the jury by a fair preponderance of

credible evidence that the defendant persisted in the administration of anesthesia after the plaintiff informed the defendant that she did not want him to continue to do so?" The jury answered "no." The judge then directed a verdict for the defendant on the remaining count. The plaintiff excepted to the direction of the verdicts and to the denial of her motion for a new trial. There was no error.

The relevant evidence is as follows. On March 30, 1966, the plaintiff, an outpatient at the Dental Clinic of the Massachusetts General Hospital, was "put to sleep" prior to oral surgery by an intravenous injection of Brevitol, an anesthetic. The defendant was a qualified anesthesiologist at the hospital. Dr. Kittredge Anderson, a neurologist called by the plaintiff, testified that he saw the plaintiff on two occasions, namely on May 23, 1968, and on June 6, 1968, but that he had never treated the plaintiff. He stated that there was an irritation of the "median nerve" and that the irritation was causally related to the intravenous injection of Brevitol on March 30, 1966. On cross-examination, Dr. Anderson stated that he could not be sure that the nerve injury was caused by the needle, or that the needle touched or entered the nerve, and that there could have been infiltration of Brevitol and no damage. He testified that there are many ways a nerve can be affected, such as by a blow or by trauma; that the median nerve could have been damaged after March 30, 1966; and that the plaintiff gave him a history of alcohol addiction which could be quite significant in a situation of this type. He further testified that there are objective tests to determine whether the hand was "clawed" by virtue of a defect in the nerve, but he had not performed them. He admitted that he had seen the Massachusetts General Hospital record, and an "[e]lectromyogram report" which showed no damage to the median nerve; that there was no mention of a "claw hand" in the hospital record of April 12, 1966; that his own examination revealed no injury to the radial nerve; and that although the plaintiff said her forearm was "flexed"

up after the injection, there was no mention of this in the hospital record.

The plaintiff testified that during the intravenous injection her hand began to hurt and that her fingers began to "crawl up"; that when the injection was completed her fingers were "all crawled up"; that finally "my hand went completely closed and my arm came up." [1] The defendant was called as a witness by the plaintiff. His testimony was devoid of any evidence indicating negligence on his part or that he did not conform with established medical practice.

The instant case is not one of those "exceptional cases . . . 'where the negligence and harmful results are sufficiently obvious as to lie within common knowledge.' " *Haggerty* v. *McCarthy*, 344 Mass. 136, 139. A review of the entire record fails to reveal any evidence that the defendant departed from accepted medical practice, nor was the expert testimony sufficient to establish a causal relationship between the plaintiff's "clawed hand" and any act of the defendant. *King's Case*, 352 Mass. 488. *Sevigny's Case*, 337 Mass. 747.

Dr. Anderson did testify that the nerve irritation was caused by the injection but in no way did his testimony indicate negligence on the part of the defendant or that the defendant departed from accepted medical practice. On the record before us Dr. Anderson's opinion as to the causal relationship between the injection and the nerve irritation must be disregarded because "it amounts to no more than mere speculation or a guess from subordinate facts that do not give adequate support to the conclusion reached." *Sevigny's Case, supra*, at 751. A verdict for the defendant was properly directed on the count for negligence.

We find no error in the court's order for directed verdicts on counts 2 and 3. The plaintiff admits that she consented to the insertion of the needle in the first place. After hearing all the evidence the jury was given the question previously recited. The burden is on the plaintiff to prove

---

[1] There is nothing in the hospital record which corroborates the plaintiff's testimony.

lack of consent and this she failed to do.   *Belger* v. *Arnot*, 344 Mass. 679, 684.   *Ford* v. *Ford*, 143 Mass. 577, 578.

The finding of the jury was not "so greatly against the weight of the evidence that it could be said that the denial of the plaintiff's motion for a new trial was an abuse of discretion amounting to an error of law or a miscarriage of justice." *Pearlin* v. *Farrell*, 356 Mass. 741.

*Exceptions overruled.*