**In re SAUGUS GENERAL HOSPITAL, INC., Debtor.**

**Philip L. SISK, Receiver of Saugus General Hospital, Inc., Plaintiff,**

**v.**

**SAUGUS BANK AND TRUST COMPANY, Defendant.**

**Bankruptcy No. 78–1641–JG.**

United States Bankruptcy Court, D. Massachusetts.

Nov. 6, 1980.

Anthony M. Feeherry, Goodwin, Procter & Hoar, Boston, Mass., for plaintiff.

Bernard A. Dwork, Barron & Stadfeld, Boston, Mass., George O. Gregson, Saugus, Mass., for defendant.

## MEMORANDUM AND ORDER

JAMES N. GABRIEL, Bankruptcy Judge.

The instant complaint was filed by the Receiver of the Saugus General Hospital, Inc., a debtor under Chapter XI of the Bankruptcy Act. Plaintiff seeks to recover all, or in the alternative, a substantial portion of $83,655.92 of the Hospital's funds which were seized by the defendant, Saugus Bank and Trust Company from various of the Hospital's checking accounts at the Saugus Bank. The complaint has raised several legal issues relating to the defendant's right of set–off.

As of August, 1978, Saugus General Hospital, Inc., operated a hospital located at 81 Chestnut Street, Saugus, Massachusetts. The real property was acquired by the Hospital on or about June 4, 1951 and is entirely within an area of the Town of Saugus that is zoned as a single residence R–1 district. Subject to the issuance of a special permit cemeteries, hospitals, sanitariums, nursing homes, rest homes, private stables and philanthropic institutions are a permissible use.

On or about April, 1967 the Hospital executed a note, secured solely by a first mortgage on the real property at 81 Chestnut Street, to Saugus Bank in the principal amount of $200,000 for a term of fifteen years at six percent per annum, payable in equal monthly installments of $1,687.75. Said note included a tax escrow provision.

The last payment on the mortgage loan was made on September 6, 1977 and was applied to principal and interest due as of February, 1977, the balance having been applied to the tax escrow account. The mortgage note was in default from time to time prior to September 1977.

On July 20, 1978 a notice of intention to foreclose was given to the Hospital by Saugus Bank followed in August, 1978 by the filing of a Petition for Authority to Foreclose in the Superior Court of Essex County, Docket No. 12237.

The Board of Directors of the Hospital Corporation, after discussing the Hospital's financial problems throughout the summer of 1978, unanimously voted on August 19, 1978, "to close Saugus General Hospital as an acute medical surgical hospital facility and dissolve the corporation within a reasonable time and in such a manner as legal and accounting counsel may advise with the agreement of the Board of Directors and Stockholders." (Exhibit # 8 accompanying stipulation).

On August 23 and 24, 1978 the Massachusetts Department of Public Health conducted a survey of the Hospital which disclosed numerous deficiencies. Based on the survey's results, and after a hearing with Hospital officials, the Department of Public Health on August 30, 1978 imposed certain restrictions on the continued operation of the Hospital as follows:

a. Discontinuance of all admissions until adequate nursing staff could be provided;

b. Discontinuance of all surgery except in emergency cases; and

c. Discontinuance of the emergency operation after appropriate community agencies had been notified.

The parties have stipulated that as of August 28, 1978, the status of the mortgage loan account was as follows: account was seventeen months in arrears, with a principal balance of $82,845.74 and accrued interest of $7,245.03; accrued real estate taxes, not including interest or penalties, totaled $44,685.00, resulting in an outstanding balance of $134,775.77.

Furthermore, this Court finds that as of August 28, 1978 the Bank was aware of the Hospital Board's resolution to close, the condition of deterioration of the Hospital's physical facilities and the Hospital's unsuccessful attempts during the previous year in finding a prospective purchaser for the business and real estate. The Court also finds that by August 1978, the Hospital's Board of Directors had substantially ceased communication with the Bank and that no stockholders came forward with any proposals to resolve the mortgage situation.

As of the opening of the business day on August 28, 1978, the Bank put a hold on all of the Hospital's funds, notifying all bank managers and the Hospital. This Court finds that at that time Saugus Hospital maintained various separate checking accounts at the Bank, designated as follows:

Saugus General Hospital Inc., Regular Account No. 13–846–0

Saugus General Hospital Inc., Payroll Account No. 13–823–1

Saugus General Hospital Inc., Tax Account No. 13–831–2

The Hospital's payroll account was used exclusively for the payment of payroll checks which bore specific designations "Payroll Account" and "Payroll Check" and were a different size and color than General Account checks. A separate corporate resolution was filed authorizing different individuals to sign payroll checks than general account checks. Additionally all monies deposited in the Payroll Account were drawn on checks from the General Account in an amount equal to the weekly payroll which normally was expected to result in a zero balance in the Payroll Account after employees cashed their checks. The statements for the payroll account were issued separately by the Bank at a rate twice as frequent as those issued for the general account.

On August 28, 1978 the Bank debited each account and credited its Treasurer's checking account as follows–General Account No. 13–846–0, $63,261.40; Payroll Account No. 13–823–1, $20,006.68; Tax Account No. 13–831–2, $388.84, issuing three treasurers checks each in the above noted amounts payable to Saugus Bank and Trust.

This court specifically finds that the check dated August 23, 1978 in the amount of $31,458.31, drawn on the Saugus Hospital General Account payable to the Saugus Hospital Payroll Account, was received by the Bank on the banking day of August 28, 1978. Although conditionally posted on August 28, 1978, the check was dishonored on August 29, 1978.

At all times from August 28, 1978 to November 22, 1978, the Treasurer's checks were in the control of the Bank's President and/or Treasurer and the funds were used for the general purposes of the Bank continually from August 28, 1978. Although computer notices of loan statements were sent out in September and October, 1978 indicating no reduction in the outstanding balance of the Hospital's loan, no interest charge was made from the period between August 28 and November 28, 1978. Finally, on November 28, 1978, the Bank credited the $83,656.92 to the Hospital's mortgage loan account and debited its own account in that amount. Thus, the mortgage loan account showed a principal balance of $6,433.85 with interest paid through August 28, 1978.

On September 1, 1978, an involuntary petition in bankruptcy was filed against Saugus General Hospital. Operations at the Hospital terminated on September 6, 1978 at which time the Department of Public Health considered the license to operate as abandoned.

The defendant Bank's position is that it exercised its common law right to set–off the funds from all deposit accounts of the Saugus General Hospital and applied the proceeds to the defaulted loan obligation. The Bank contends such set–off was in fact accomplished as of August 28, 1978.

The plaintiff has argued that Massachusetts law requires the Bank to show that it is insecure before setting–off deposit funds on a secured obligation. Plaintiff further argues, inter alia, that even if the Bank were insecure its right to set–off only extends to the deficiency balance beyond the value of the collateral and in no event would such right extend to the funds in the payroll account. Finally, plaintiff alleges the set-off was not completed until November 1978, when the Bank credited the Hospital's mortgage loan account.

The parties have agreed that the Bank's claim to the legal right of set–off in this case is based entirely upon its common law right. There are no contractual rights to set off in the loan documents.

Set–off, as generally understood, is "that right which exists between two parties, each of whom under an independent contract owes an ascertained amount to the other, to set–off his respective debt by way of mutual deduction." *John Wills, Inc. v. Citizen's National Bank of Netcong*, 125 N.J.L. 546, 16 A.2d 804 at 806.

The Saugus Hospital, as of August 28, 1978, was a debtor to the Bank for the outstanding balance of the mortgage indebtedness. Likewise, the relationship between the Bank and Saugus Hospital was that of debtor and creditor, the Bank being a debtor as to funds on general deposit. *Forastiere v. Springfield Institution for Savings*, 303 Mass. 101, 20 N.E.2d 950; *Furber v. Dane*, 203 Mass. 108, 89 N.E. 227; *National Mahaiwe Bank v. Peck*, 127 Mass. 298. These general deposit funds are held to be the absolute property of the Bank. *Krinsky v. Pilgrim Trust Co.*, 337 Mass. 401, 149 N.E.2d 665 at 668 (citing *Laighton v. Brookline Trust Co.*, 225 Mass. 458, 11 N.E. 671). See also: *National Mahaiwe Bank v. Peck*, 127 Mass. 298. Therefore, mutual outstanding debts are established as of August 28, 1978.

The Bank contends that a secured creditor should be permitted to pursue all his remedies until he receives satisfaction, citing *Broadway National Bank of Chelsea v. Hayward*, 285 Mass. 459, 464, 189 N.E. 199 at 202. However, in the *Hayward* case the plaintiff, the holder of a second mortgage, had sought the court to require the defendant, holder of a first mortgage and personal guarantee, to postpone one of his remedies until the other had been exhausted. The Court denied the request for marshalling in that case and allowed the first mortgagee to foreclose, not restricting him to obtain satisfaction from the personal guarantee in the first instance. This case is clearly distinguishable from the instant proceeding before this Court.

The established law in this Commonwealth is that a bank may apply the balance of an account due the depositor to the satisfaction of outstanding matured indebtedness due the bank from the depositor.

*Krinsky v. Pilgrim Trust Co.*, 337 Mass. 401, 149 N.E.2d 665; *Forastiere v. Springfield Institute for Savings*, 303 Mass. 101 at 103, 20 N.E.2d 950, 951; *Putnam v. U. S. Trust Co.*, 223 Mass. 199, 111 N.E. 969; *Furber v. Dane*, 203 Mass. 108, 89 N.E. 227 (1909). This right to set–off however, is restricted where collateral has been given for a specific debt. In this Commonwealth, a secured creditor is required to first seek satisfaction from the collateral unless that collateral is insufficient to satisfy the obligation. "The right of a bank to apply the deposit of its debtor to the payment of his matured indebtedness has been denied if that indebtedness is fully protected by other collateral security." *Furber v. Dane*, 203 Mass. 108, 89 N.E. 227 at 230 (1909); *Prudential Realty Co. v. Commissioner of Banks*, 241 Mass. 277, 279, 135 N.E. 221 (1922).

The plaintiff herein, the receiver of the Hospital, relies heavily on the wording in *Forastiere* wherein the Court states "It has been held that where the debt from the depositor to the bank is a secured one, a contract is implied that the bank may resort to a set–off of a deposit only for any balance of the debt beyond the value of the security." *Forastiere v. Springfield Institution for Savings*, 303 Mass. 101, 20 N.E.2d 950 at 952 (1939). The *Forastiere* court then cites *Furber v. Dane* and *Prudential Realty Company*. Neither of the latter two cases reached such a holding, even in dicta. They held simply that if the indebtedness is fully protected by collateral security, no right to set–off funds on deposit would accrue. *Furber v. Dane*, 203 Mass. 108, 89 N.E. 227 at 230 (1909); *Prudential Realty Co. v. Commissioner of Banks*, 241 Mass. 277 at 279, 135 N.E. 221 (1922). This Court knows of no case, and none has been suggested, which requires a secured creditor to partially set–off a debt after making a precise mathematical determination as to the amount of the debt actually fully secured by the collateral. Therefore, it appears that the Bank, although secured, may set–off funds on deposit if the bank carries its burden of proof that the security is inadequate. *Forastiere v. Springfield Institution*

*for Savings*, 303 Mass. 101, 20 N.E.2d 950, 952 (1939).

The standard of proof in this civil action is by a fair preponderance of the credible evidence. *King's Case*, 352 Mass. 488 at 492, 225 N.E.2d 900 (1967).

The essential factual determination is the value of the collateral as of August 28, 1978. It is undisputed that the Bank's security was a mortgage on land and buildings only, and did not include personalty. As of August, 1978, the Bank was owed approximately $135,000 including an $83,000 principal balance, $7,300 of accrued interest and $45,000 in real estate taxes. A foreclosure sale of the property was contemplated to take approximately four to eight months during which time the property would have to be maintained and taxes and interest would accrue. Neither party has suggested that the property could be sold as an ongoing business, both agreeing that requisite permits and variances and a certificate of need would be required to use the property as a medical care facility. Furthermore, substantial renovation would be required to meet licensure standards of the Commonwealth.

The Hospital introduced credible evidence of value, as of August 1978, through its appraiser. Assuming only the real estate and building values and no license to operate as a hospital, the opinion of value was stated as $200,000. This opinion of value was based on conversion of the realty to its highest and best use as a nursing home, and took into consideration the necessary delays inherent to a foreclosure sale, during which time a prospective purchaser could investigate and obtain commitments for licenses, permits and variances. The Hospital's appraiser did concede however, that such purchase would likely be on speculation. A quick sale value was stated as between $100,000 to $150,000.

The Bank, on the other hand, contends that without licenses, permits and variances in hand, the collateral was worth no more than the land value, or $30,000. Although no real estate appraisals were introduced by the Bank, an expert consultant in health care planning and management testified that the cost of renovation would make the building unsuitable for use as a medical facility. This opinion, coupled with the fact that the Hospital had attempted to sell the facility for approximately one year prior to August 1978, is also entitled to serious consideration.

At a foreclosure, the Court is presented with a range of credible values between $30,000 and $200,000. It appears to the Court that the value of this property is particularly dependent upon conditions in the marketplace and the availability of purchasers willing to speculate at the time of sale. The only absolute is that at the time of set–off, this real estate would have to be sold for a price in excess of $135,000 for the Bank to be fully secured.

We cannot assume the best possible conditions and therefore must disregard the $200,000 appraisal. Even viewing the quick sale value, given by the Hospital's expert, of between $100,000 to $150,000 on August 28, 1978, the range is such that the Bank may reasonably have been unsure of full payment from the sale of the collateral on that date.

This Court knows of no requirement which would force the Bank to wait for six months and accrue additional interest, taxes and maintenance costs attendant to a foreclosure, or to make a determination of available potential purchasers. I find, based on all of the facts, that as of August 28, 1978 the Bank was reasonable in its belief that the debt owed by the Hospital was not fully secured by the collateral given. Accordingly, the Bank had the right to apply the deposits of the Hospital to the matured indebtedness on that date.

The second issue for determination is the date on which the set–off is deemed to have been accomplished. It is undisputed that on August 28, 1978, Saugus Bank seized a total of $83,655.92 of the Hospital's funds from three of the Hospital's checking accounts. These funds were transferred into a Treasurer's account at the Bank at which time three Treasurer's checks were issued representing the amount in each of

the Hospital's checking accounts as of the beginning of the banking day on August 28, 1978. From that date, the Bank exercised exclusive control over the funds.

The Bank contends the above transaction accomplished the set–off. The Hospital, however, argues that the set-–off was not completed until November 22, 1978 when the Hospital's mortgage loan account was credited in the amount of these checks.

Neither party has cited any decision which precisely defines the steps which a bank is required to take in order to effectuate a set–off. In Massachusetts, it appears that "the form in which a set–off is accomplished as between banker and depositor is immaterial. It may be by the giving of a check or by direct method bookkeeping." *Putnam v. U. S. Trust Co.*, 223 Mass. 199 at 203, 111 N.E. 969 (1916). See also: *Lowell v. International Trust Co.*, 1 Cir., 158 F. 781; *Studley v. Boylston National Bank*, 229 U.S. 523, 33 S.Ct. 806, 57 L.Ed. 1313.

In *Nineteenth Ward Bank v. First National Bank of Weymouth*, 184 Mass. 49, 67 N.E. 670, (1903), the court found that even where the proper bookkeeping entries had not yet been recorded, the actions of the Bank were valid and irrevocable even without recordation. *Nineteenth Ward* at p. 53, 67 N.E. 670. In that case a cashier had stamped a note as paid and had perforated it to indicate payment, before any bookkeeping entry was made. The Bank's actions alone were held to have constituted payment of the note, at pp. 52–53, 67 N.E. 670.

There is no dispute that on August 28, 1978 the Saugus Bank issued three checks to its Treasurer's Account representing the funds which had been on deposit in the Hospital's accounts. This Court finds that the set–off was effected by the acts of the Bank and not by the subsequent bookkeeping entries–for the funds ceased to be available for the Hospital's use on the date that the Bank took affirmative action, namely on August 28, 1978. Where the depositor could no longer draw on the funds removed from the accounts, the set–off is complete. *U. S. v. Sterling National Bank and Trust*, 492 F.2d 919 (2d Cir. 1974).

The Sixth Circuit in considering the instant question held that the intent of the Bank to set-·off must be accomplished by "some act of consummation and evidence of the consummated setoff in Bank records." *Baker v. National City Bank of Cleveland*, 511 F.2d 1016 at 1017 (6th Cir. 1975). Likewise, the fifth circuit in discussing the Bank's obligations under Section 4–303 of the Uniform Commercial Code has observed that the bank's actions must be definite and objectively ascertainable. *Citizens and Peoples National Bank of Pensacola v. U. S.*, 570 F.2d 1279 at 1284 (5th Cir. 1978).

Certainly book entries in this case were made by the Bank prior to November 22, 1978. The transfer from the Hospital's accounts into the Treasurer's Account is traceable to August 28, 1978, as is the cut-–off and seizure of the Hospital's funds on that date when mutual debits and credit were entered. The Hospital, however, appears to be arguing that the record necessary is the reduction of its mortgage account. This court is unable to interpret the cases which require book entries to mean a specific book entry showing a reduction in the depositor's loan account being necessary before the Bank can rightfully assert that the set–off has been accomplished. Furthermore, it seems to this court, that the actions of both parties recognized the set–off as a completed act as of August 28, 1978. The Hospital proceeded to make alternate arrangements with the Bank for the purpose of paying its payroll almost immediately; although the Court does not rely on this fact alone.

Accordingly, this Court finds that the date of August 28, 1978, when the Hospital's accounts were seized and credited with their respective outstanding balances, was the effective date of set–off.

Based on the above finding, it is clear that there were no funds in the Hospital's General Account to be transferred to the Payroll Account on August 28, 1978. Thus, the check received by the Bank on the banking day of August 28, 1978, drawn on

the General Account for $31,458.31 payable to the payroll account was rightfully dishonored. Those funds never became part of the Hospital's payroll account.

The final issue for determination is whether the Payroll Account in the amount of $20,006.68, as it existed on August 28, 1978, was subject to the Bank's right of set–off. The Hospital has contended that its payroll account was a deposit for a special purpose and was, in fact, a special account which the Bank had no lawful right to appropriate for its own use.

The Bank has argued that the deposit in question, even if for a special purpose, does not rise to an account immune from set–off. The Bank relies on the general rule that a deposit is presumed to be a general deposit, with the burden on the opposing party to establish otherwise. *First National Bank of Clinton v. Julian*, 383 F.2d 329 at 338 (8th Cir. 1967) (quoting *10 Am.Jur.2d Banks* Section 363) [1]

 This Court agrees with the Bank's position and finds that the Hospital has successfully carried its burden of proof.

The facts as established at trial indicate that the deposits to the Payroll Account were made only by check from the General Account to cover the payroll as it became due. The Bank knew of this fact and was, on more than one occasion, involved in transferring funds from the General Account to ensure payment of these payroll checks. The Hospital also established that the payroll checks, furnished by the Bank, contained the distinctive legend of "Payroll Account" and "Payroll Checks," were a different size and color than the General Account checks, and their statements were treated differently from those of the General Account. Furthermore, a separate corporate resolution, supplied by the Bank, established proper authorization signatures for the Payroll Account which were different from those authorized to sign general account checks. There is no doubt that the Bank was well aware of the special character of the Hospital's Payroll Account and the use for which it was intended. "(W)here the deposit is made for a special purpose, known to the Bank–as for example, to be paid to creditors–the money is held as a trust fund and hence the bank is without lawful right to appropriate the deposit to its own use as a set–off." *4 Collier on Bankruptcy*, Para. 68.16, 925–26 (14th Ed.)

This court finds that the money deposited was known to be for a specific purpose and at a minimum, an implied contract existed for the Bank to act as mere bailee for disbursement of the funds in the Payroll Account. "Whether a trust (is) created depends upon the intention of the parties manifested by their words and conduct and the end to be accomplished." *Carpenter v. Suffolk Franklin Savings Bank*, 362 Mass. 770, 291 N.E.2d 609 at 614 (1973) "The existence of a trust does not depend upon the terminology used." *Gordon v. Gordon*, 332 Mass. 193 at 195, 124 N.E.2d 226, 227.

In the instant case I find that both the Hospital and the Bank clearly understood that funds would only be transferred to the Payroll Account when payroll checks were issued. The funds in that account were only intended to pay debts to designated persons as those debts accrued, and never were intended to become the property of the Bank.

The reasoning in *In re Applied Logic Corp.*, 576 F.2d 952 (2d Cir. 1979) is applicable here. In that opinion Judge Friendly distilled the following principle from case law, stating:

It is indeed settled law that a bank cannot exercise a set–off against a deposit which is known by it to be dedicated to a special use, e. g., for the sole purpose of meeting payrolls or paying taxes. *In re Applied Logic* at 958.

---

1. *10 Am.Jur.2d Banks Section 363:*

In the absence of an agreement and proof to the contrary, a deposit is presumed to be general rather than special, and the burden evolves on the party who claims that the deposit is a special one to show that it was received by the bank with the express or clearly implied agreement that it should be kept separate from the general funds of the bank and that it should remain intact.

Similarly, the Ninth Circuit has held that the funds in a payroll account are not of a general character, but rather are deposits for a special purpose, which the bank may not appropriate by way of set–off. *Goggin v. Bank of America National Trust and Savings Assoc.*, 183 F.2d 332 (9th Cir. 1950); cert. denied 340 U.S. 877, 71 S.Ct. 122, 95 L.Ed. 637.

In addition, this court will also consider the existing statutory provisions in this Commonwealth which recognize Payroll Accounts as special accounts beyond the reach of attaching creditors. Massachusetts General Laws, Chapter 246, Section 20 provides:

> The goods, effects or credits, of the defendant intrusted to, or deposited in the hands or possession of a person summoned as his trustee shall, except as hereinafter provided, be attached and held to respond to final judgment, as if they had been attached upon an original writ of attachment; provided, that any moneys of the defendant deposited in any account designated as a payroll account shall not be subject to attachment hereunder ...

It appears that the intent of the Legislature in Massachusetts was to establish the special character of a payroll account.

Based on the facts in this case, I conclude that the Hospital's Payroll Account was a special purpose account not subject to the Bank's right of set–off.

In accordance with the above findings of fact and conclusions of law, the Saugus Bank and Trust is found to have legally exercised its right to set–off the funds in the Hospital's General Account on August 28, 1978. The seizure of the funds from the Hospital's Payroll Account on that date, however, is found to have been illegal. The Bank is directed to turn over $20,006.68 to the receiver.[2]

As to the Bank's request for findings of fact and rulings of law, they are deemed allowed where consistent with the opinion herein and where inconsistent shall be deemed to have been denied.

2. The plaintiff has waived all claims to funds in the account designated as Saugus General Hospital Tax Account No. 13–831–2.