**SECURITY LIFE AND ACCIDENT IN-SURANCE COMPANY, Appellant,**

v.

**UNITED STATES of America, Appellee.**

No. 21287.

United States Court of Appeals Fifth Circuit.

Feb. 25, 1966.

Rehearing Denied April 11, 1966.

W. Bruce White, William M. Acker, Jr., Birmingham, Ala., Jack Crenshaw, Montgomery, Ala., for appellant.

Ramsey Clark, Asst. Atty. Gen., Roger P. Marquis, Grace Powers Monaco, Elizabeth Dudley, Attys., Dept. of Justice, Washington, D. C., for appellee.

Before JONES and BELL, Circuit Judges, and HUNTER, District Judge.

JONES, Circuit Judge:

The appellant, Security Life and Accident Insurance Company, was the owner of an office building in the City of Montgomery, Alabama. It was first leased to the United States in 1946. In 1957, a new lease agreement was executed on behalf of the United States by General Services Administration, generally called G.S.A., for the use of the Veterans Administration, which is usually referred to as V.A. The lease was for a five year term ending June 30, 1962, at an annual

rental of $179,000. The lease gave to the lessee an option [1] to renew from year to year for an additional five years at the same rental upon giving notice.

Upon the expiration of the lease the V.A. remained in possession. On July 6, 1962, Security Life wrote G.S.A. advising that it was electing to treat the holding over as a renewal of the lease.[2] On July 30, 1962, the United States filed a complaint in eminent domain and a declaration of taking for the purpose of acquiring the right to use the property [3] for a term commencing July 1, 1962 [4] and ending December 31, 1962, with the Government obtaining options to extend the use and occupancy for further periods.

Security Life answered and alleged, among other things, negotiations for a new lease and its demand for a restoration of the premises to the original condition at the time of the lease.[5] In its answer, as a Fourth Defense, Security Life set forth its letter of July 6, 1962,[6] and asserted that G.S.A. made no reply to the letter but continued to occupy the premises after the expiration of the lease. It was claimed by Security Life in its answer that, by the holding over after the expiration of the term and the election of Security Life, the United States became a tenant under the lease terms for a five year period or, in the alternative, for a one year period. Security Life prayed that its Fourth Defense might be treated both as an absolute defense to the complaint and also as a cross-claim. The United States, in a pleading styled Answer to Cross-Claim, admitted the negotiations for a new lease, the demand of Security Life for a restoration of the property, and that Security Life wrote the letter and that it did not reply. An amendment to this pleading was filed which attempted to restrict it so that it would be effective only as admissions on the issue of the Government's right to take and nothing more.

At the time of the filing of this amendment, the Government also filed a motion to strike the answer of Security Life insofar as it purported to state a cross-claim. The motion was granted. To make certain that its admissions still stood, the Government filed a further amendment reincorporating its admissions of the facts alleged in the Fourth Defense asserted by Security Life in its answer. The district court entered an

1. "This lease may, at the option of the Government, be renewed from year to year at a rental of $179,000 per annum, and otherwise upon the terms and conditions herein specified, provided notice be given in writing to the Lessor at least sixty (60) days before this lease or any renewal thereof would otherwise expire: Provided that no renewal thereof shall extend the occupancy of the premises beyond the 30th day of June, 1967."

2. "In regard to the above referred to lease of the property located at 400 Lee Street, and known as the VA Building, we hereby notify you as follows:
"The Government has remained in the leased premises beyond the expiration of this lease. Under these circumstances, the landlord has the option to treat the tenant as a trespasser or to treat the holding over as a renewal of the expired lease on the same terms and conditions.
"The landlord has elected to treat the lease as renewed for another five year period on the same terms and conditions. If the landlord is mistaken in the right to treat the lease as renewed for five years, then the landlord treats the holding over as a renewal for one year on the same terms and conditions."

3. There is an indication that the property condemned may have had a slightly larger area than was described in the lease.

4. It will be observed that a month of the period of the taking had elapsed before the suit was commenced and the declaration of taking filed.

5. "During the several months immediately preceding the expiration of the above-said lease, on, to-wit, June 30, 1962, Security Life attempted to negotiate a new lease on the subject property with General Services * * *. Security Life demanded in writing of General Services that the subject premises be restored before June 30, 1962, according to the complete plans and specifications of the premises extent at the time of the original occupancy of the premises by the Veterans Administration in the year 1946, as called for under the terms of the lease."

6. Note 2, supra.

order which recited that it was the court's opinion that the issue raised by the answer of Security Life, of the right of the United States to condemn the property described in the declaration of taking, was a question of law to be decided by the court, and this issue was set for a hearing. The question being, as the court saw it, a question of law, no testimony was taken at the hearing and the questions determined by the court were decided solely on the pleadings. The court, by its order, held that the objections of Security Life to the right of the United States to condemn the property described in the declaration of taking should be overruled and denied. The court's order resolved the question of the right to condemn a lease interest. It determined that the question of public necessity for a taking of property by eminent domain was not for judicial determination in the ordinary case. The order recites that the only issue remaining was one of just compensation. Shortly after the entry of this order, a pretrial order was entered and in it is the recital that the sole issue for trial was the amount of just compensation for the estate taken. The pretrial order preserved to Security Life its objections to the taking. The cause was tried, a verdict returned, an order for a new trial, unless a remittitur be filed, was entered, a new trial was had, a smaller verdict was returned and judgment entered upon it, with this appeal following.[7]

The question as to whether the United States was a tenant holding over and subject to the liabilities of such a tenant, was not mentioned in any of the orders of the district court, although squarely presented by the answer of Security Life. Perhaps it was disposed of in the court's order overruling the defenses referred to as objections. If the United States became a holdover tenant then it was in rightful possession for a term in excess of that sought to be condemned and the eminent domain action would not lie.

It is a general rule in the law of landlord and tenant that where a tenant for a year or other definite term holds over after the term and the landlord elects to hold the tenant for another term, the tenant is bound thereby. The law implies an agreement on the part of the tenant. 32 Am.Jur. 789, Landlord and Tenant, § 935; 1 Tiffany, Real Property, 3rd Ed. 281, § 175. It is true, as the Government stresses, that the contracts of the United States are governed by the laws of the United States. Clearfield Trust Co. v. United States, 318 U.S. 363, 63 S.Ct. 573, 87 L.Ed. 838; Royal Indemnity Co. v. United States, 313 U.S. 289, 61 S.Ct. 995, 85 L.Ed. 1361. It is customary, where Congress has not adopted a different standard, to apply to the construction of Government contracts the principles of general contract law. Priebe & Sons v. United States, 332 U.S. 407, 68 S.Ct. 123, 92 L.Ed. 32. Such contracts are construed as contracts between private parties. S. R. A. v. State of Minnesota, 327 U.S. 558, 66 S.Ct. 749, 90 L.Ed. 851. The general proposition that the United States may be liable on implied contracts is well settled. 91 C.J.S. United States, § 89, p. 170; 54 Am.Jur. 576, United States § 66. The rule that obligations which would be implied against citizens under the same circumstances will be implied against the United States is applicable to the law dealing with landlord and tenant. United States v. Bostwick, 94 U.S. 53, 24 L.Ed. 65. The property which was the subject matter of the lease and is the subject matter of this litigation is in Alabama and it is proper that we look to the laws of that state for a statement of governing principles. It was held in 1846 that where a tenant in possession under a lease continues in possession after the expiration of the term, the law implies a renewal of the lease on the same terms. Harkins v. Pope, 10 Ala. 493. The same principle was stated and applied in 1963, McIntyre v. Coker, 274 Ala. 457, 150 So.2d

---

7. Thus brief highlighting of the procedural steps in the cause seems to be all that is required at this point.

220. Between the two cases cited are a number of others to the same effect. The rule, well established when Blackstone wrote, was stated in one of the early Alabama cases in this language:

"The principle is too well established for further controversy, that, when a tenant for years holds over after the expiration of his term, the law will imply an agreement to hold, or continue the lease, for another year, upon the terms and conditions of the prior lease. It is the duty of the tenant, so soon as the period of his tenancy expires, to peaceably surrender the possession of the demised premises to his landlord, and if he neglects or refuses to do so, the landlord may treat him either as a trespasser, or as a tenant, according as his own option may dictate." Wolffe v. Wolff & Bro., 69 Ala. 549, 44 Am. Rep. 526.

The Government contends that it is not bound as a holdover tenant and to support this contention it points to Goodyear Tire & Rubber Company v. United States, 276 U.S. 287, 48 S.Ct. 306, 72 L.Ed. 575. This case, as we read the opinion, is not authority for a doctrine that the United States is not in any event to be bound by the holdover principle. The rule was recognized but was not applicable because no appropriation was available with which to pay rent for the extended term, and Government officials had given express notice to the landlord that it would not pay rent beyond the period of occupancy. In the *Goodyear* case the court refused to imply a contract on the part of the United States where the facts clearly indicated an intent not to be bound by a contract which the courts might have implied between private parties. Hughes Transportation, Inc. v. United States, 1954, 128 Ct.Cl. 221, 121 F.Supp. 212. In the annotation to the report in 72 L.Ed. 575, the rule and its application to governmental bodies, is stated, and from the annotation we quote

"In the absence of statute not inconsistent with such a result, it seems to be generally assumed that a municipal, county, state, or Federal governmental body as lessee of premises is subject to the same obligations and liabilities, upon holding over after the expiration of a duly executed lease, as is a natural person. Thus, where any of these governmental bodies hold over after the expiration of an express lease for a year or years, the general rule is that, upon implied contract, the governmental body so holding over becomes a tenant for another year, at the option of the landlord, upon the terms of the original lease. Kugler v. United States (1808) 4 Ct.Cl. 407; Chicago v. Peck (1901) 98 Ill.App. 434 (affirmed in (1902) 196 Ill. 260, 63 N.E. 711); Lehmann v. Chicago (1917) 203 Ill.App. 414; Gardner v. Dakota County (1874) 21 Minn. 33; Davies v. New York (1883) 93 N.Y. 250 (reversing (1882) 16 Jones & S. 194); Witt v. New York (1868) 6 Robt. 441; Brennan v. New York (1903) 80 App.Div. 251, 80 N.Y. Supp. 247, 12 N.Y.Anno.Cas. 407; Dauphin County v. Bridenhart (1851) 16 Pa. 458.

"In most of the cases above cited the court apparently assumed, without discussing the point as an independent one, that the governmental body was subject to the same rule as to holding over after expiration of the original term that applies to an individual lessee."

■■ The law will not imply a premise contrary to the express intention of the party to be charged. Meaher v. Pomeroy, 49 Ala. 146. The notice given by Government officials to the landlord in the *Goodyear* case was inconsistent with and evidenced an intention to extend the lease, and this prevented the implied obligations of a holdover tenant from arising. In the case before us no more was shown than that, as was said by the district court in one of its orders, "the parties had failed in their attempts to negotiate a new lease." This falls far short of establishing any fact that would rebut

the presumption or implication of a holder tenancy.

In Kugler v. United States, the first of the cases cited in the foregoing annotation, a dissenting judge expressed the view, which the Government urges here, that the United States differs from an ordinary tenant and that its holding over should be regarded as an exercise of eminent domain rather than as an act of extending the lease. The court held otherwise.

We reach the conclusion that the United States became a holdover tenant for the extended term of a year beyond the date fixed in the lease for its expiration. This being so, it could not acquire by condemnation something less than it already had by the implied contract of holdover tenancy.

The submission to the court upon the objections of Security Life was correctly stated by the court to be "upon the pleadings, neither party introducing evidence." The submission of both parties to a trial of the objections, including the defense that the Government was a holdover tenant, was properly taken by the district court for a determination by the court of the legal issues as to whether the Government had the right, upon the uncontroverted facts, to maintain a suit in eminent domain. It seems unimportant to decide and consider whether the district court was acting under Rule 12 (c) of the Federal Rules of Civil Procedure, authorizing a judgment on the pleadings, or under Rule 12(d), providing for preliminary hearings of certain defenses. Either rule would permit the consideration and determination of the legal issues submitted. Both parties regarded the facts as pleaded and admitted as sufficient to present the questions as to the right of the United States to take by condemnation the estate which it sought to acquire. The case was in a proper posture for a judgment deciding these questions.

It is our opinion that the district court should have entered an order dismissing the Government's action and so that such an order may be entered, the court's judgment will be reversed and remanded. We are in agreement with the district court's determination that it had no jurisdiction of the cross-claim; not on the assigned ground of sovereign immunity, but because the amount claimed exceeds the amount of the jurisdiction of the district court under 28 U.S.C.A. § 1346(a) (2). Security Life is not without a remedy for the enforcement of such rights as it may have against the United States in an appropriate action before a proper forum.

The other questions raised by the appellant are not reached. So that an order of dismissal may be entered the judgment of the district court will be reversed and the cause remanded.

Reversed and remanded.