STEWART SAND AND MATERIAL COMPANY, Plaintiff,

v.

SOUTHEAST STATE BANK et al., Defendants.

Civ. A. No. 17870-3.

United States District Court,
W. D. Missouri, W. D.

Sept. 23, 1970.

John R. Caslavka, Shughart, Thomson & Kilroy, Kansas City, Mo., for plaintiff.

Billy S. Sparks, Linde, Thomson, VanDyke, Fairchild & Langworthy, Kansas City, Mo., for Southeast State Bank.

Paul H. Niewald, Gordon, Adams, Niewald & Risjord, Kansas City, Mo., for Federal Reserve Bank of Kansas City.

Patrick E. Hartigan, Margolin & Kirwan, Kansas City, Mo., for Federal Reserve Bank of St. Louis.

Paul Anthony White, Asst. U. S. Atty., Kansas City, Mo., for United States of America.

JUDGMENT OF DISMISSAL OF THIRD-PARTY CLAIM OF FEDERAL RESERVE BANK OF ST. LOUIS AGAINST UNITED STATES OF AMERICA AND ORDER REMANDING CAUSE TO CIRCUIT COURT OF JACKSON COUNTY

BECKER, Chief Judge.

The petition (state court counterpart of a complaint) in this case was filed in the Circuit Court of Jackson County on March 19, 1969. Therein, plaintiff alleged the wrongful payment of a check made in the amount of $4,073.00 to plaintiff without plaintiff's endorsement. It was specifically alleged that the defendants named by plaintiff, the Jackson County State Bank and the Southeast State Bank, were negligent in paying the proceeds of the check to W. C. Dean, Jr., without determining his authority to receive such proceeds. Southeast State Bank in turn filed a Third-Party Petition on April 4, 1969, against Walter C. Dean, Jr., and the Federal Reserve Bank of Kansas City, the prior endorser of the check. The Federal Reserve Bank of Kansas City, on May 22, 1969, filed a Third-Party Petition against the Federal Reserve Bank of St. Louis, which petition was also based on warranty of prior endorsement. Thereafter, on November 12, 1969, the Federal Reserve Bank of St. Louis filed its Third-Party Petition, naming the United States of America and the District Director of Internal Revenue, as third party defendants. It was alleged that the United States was the initial endorser of a bank money order of the Southeast State Bank which was allegedly endorsed without authority by Walter C. Dean, and the proceeds of which were used by Dean allegedly to pay second quarter withholding taxes for Babco, Inc., a corporation having no connections with plaintiff.

Thereafter, on December 2, 1969, this cause was removed from the State court to this court on the petition of the United States of America under the provisions of Sections 1441(a) and 1442(a)(1), Title 28, United States Code.

The composite pleadings in this case state the following chain of events in respect to the money order and check sued upon in the case at bar:

(1) On September 29, 1965, American Paving and Construction Company drew a check in the amount of $4,073.00 on Southeast State Bank made payable jointly to Stewart Sand and Material Company and Babco, Inc.

(2) This check was endorsed without authorization by W. C. Dean, Jr., for Stewart Sand and Material Company and Clyde L. Long for Babco, Inc.

(3) The $4,073.00 check was presented to the Southeast State Bank by some unnamed person or persons and the Southeast State Bank issued a bank money order, dated October 1, 1965, jointly to the same two parties, Stewart Sand and Material Company and Babco, Inc., in the same amount of $4,073.00.

(4) At an unknown date this check was endorsed in the name of the joint payees by the same parties that endorsed the earlier check, Dean endorsing for Stewart Sand and Material Company and Long for Babco, Inc.

(5) The bank money order was transferred to the Internal Revenue Service at its Kansas City, Missouri, office.

(6) The Internal Revenue Service endorsed the bank money order as follows:

"Pay to the order of any Federal Reserve Bank or of and on General Depository for Credit to the Treasurer of the United States. This check is in payment of an obligation to the United States and must be paid at par. Do not wire non-payment director, Internal Revenue Service Center, Kansas City, Missouri."

(7) Apparently through normal handling the money order was deposited in the Federal Reserve Bank of St. Louis, which endorsed it on October 11, 1965.

(8) The money order was transmitted to the Federal Reserve Bank of Kansas City on October 12, 1965, which endorsed it on that date and transmitted it for payment to the Southeast State Bank.

(9) Thereafter, the money order was paid by the Southeast State Bank.

 Third-party defendant United States of America now moves to dismiss the claim against it on the grounds of lack of jurisdiction of the United States under the provisions of the Tucker Act, Section 1346(a) (2), Title 28, United States Code, which provides that federal district courts, in addition to having jurisdiction of tax refund claims, shall have original jurisdiction of:

"Any other civil action or claim against the United States, not exceeding $10,-000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort."

Specifically, it is the contention of the Government that its endorsement of the money order upon which the third-party action is predicated constitutes an implied-in-law contract and therefore the claim is not cognizable in federal court under the provisions of Section 1346(a) (2), *supra*. See United States v. Minnesota Mut. Inv. Co., 271 U.S. 212, 46 S.Ct. 501, 70 L.Ed. 911 (1926); Merritt v. United States, 267 U.S. 338, 45 S.Ct. 278, 69 L.Ed. 643; Baltimore & Ohio R. Co. v. United States, 261 U.S. 592, 43 S.Ct. 425, 67 L.Ed. 816; Knight Newspapers, Inc. v. United States (C.A.6) 395 F.2d 353; Alliance Assurance Co., Ltd. v. United States (C.A.2) 252 F.2d 529; Baltimore Mail S. S. Co. v. United States (C.A.4) 76 F.2d 582, cert. denied 296 U.S. 595, 56 S.Ct. 111, 80 L.Ed. 421; Maryland National Bank v. United States

(D.Md.) 227 F.Supp. 504, all to the effect that, for Tucker Act jurisdiction to apply to implied contracts, it is necessary that the contract be implied in fact rather than be a quasi-contract or one implied in law. The Government argues that an endorsement of a check or money order is an implied-in-law contract under Missouri law because the endorsement alone is of no legal efficacy or significance and because such legal efficacy or significance is implied by operation of the express provisions of Section 400.3–414 RSMo, V.A.M.S., which provides as follows:

"(1) Unless the indorsement otherwise specifies (as by such words as 'without recourse') every indorser engages that upon dishonor and any necessary notice of dishonor and protest he will pay the instrument according to its tenor at the time of his indorsement to the holder or to any subsequent indorser who takes it up, even though the indorser who takes it up was not obligated to do so.

"(2) Unless they otherwise agree indorsers are liable to one another in the order in which they indorse, which is presumed to be the order in which their signatures appear on the instrument."

The proposition that an endorsement of a check or money order constitutes a contract which is implied in law is supported by several cases decided apart from the Uniform Commercial Code, among them Krinsky v. Pilgrim Trust Co., 337 Mass. 401, 149 N.E.2d 665; First Nat. Bank of Minneapolis v. City Nat. Bank of Holyoke, Mass., 182 Mass. 130, 65 N.E. 24, and Security Sav. Bank of Covington v. First Nat. Bank of Michigan City, Indiana (C.A.6) 106 F.2d 542. In *Krinsky,* the plaintiff accepted in payment of a debt of one Healey a check which one Bready had written to the order of one Walker and which Healey had intercepted. After Healey had had the intercepted check certified by the drawee bank, Krinsky accompanied Healey to the de-fendant trust company and told it to pay Healey and deposit the intercepted check in his account with defendant. Thereafter, after the discovery that the endorsements made by Healey were forgeries, Puritan paid Bready's bank and deducted the amount from Krinsky's account. In reversing a directed verdict for the defendant, the Supreme Judicial Court of Massachusetts nevertheless stated that the defendant could pay the money to Bready's bank in that the latter would have "a valid claim based on unjust enrichment because of the mistake of fact," just as would a customer of a bank who had been paid money by the bank on checks bearing forged endorsements. 149 N.E.2d at 668. In *First Nat. Bank of Minneapolis,* the plaintiff bank had paid money to the defendant bank upon a check which bore a forged endorsement. In that case, the same state court held that the defendant bank's endorsement was not one "made for the purpose of transfer [and] is not an indorsement, within the law merchant, and does not carry with it a guaranty of previous indorsements." 65 N.E. at 24. But it was nevertheless held that defendant was liable to plaintiff "in money had and received, for the money paid it under a mistake of fact." 65 N.E. at 25. And in Security Sav. Bank of Covington, *supra,* the United States Court of Appeals for the Sixth Circuit held that a collecting bank's liability to a drawee bank on a falsely endorsed check was either in implied warranty or "for money paid under mistake of fact." 106 F.2d at 545. Thus, in this sampling of cases, the obligation of an endorser of a negotiable instrument is described in terms which fit the definition of an implied-in-law contract. See, e. g., Knight Newspapers, Inc. v. United States, *supra,* 395 F.2d at 357, where it is said, "The right to a refund of money paid by mistake arises out of a duty implied by law requiring the recipient of the money to return the same to the rightful owner. See 40 Am.Jur. Payment § 187." 395 F.2d at 357. See also Maryland National Bank v. United States, *supra,* 227 F.

Supp. at 507, where the distinction between the two concepts is quoted from Williston:

> "The expression 'implied contract' has given rise to great confusion in the law \* \* \* Some of these rights [enforced by contractual actions], however, were created, not by any promise or mutual assent of the parties, but were imposed by law on the defendant irrespective of, and sometimes in violation of, his intention. Such obligations were called implied contracts. Another name is that now generally in use of 'quasi contracts'. This expression makes clear that the obligations in question are not true contracts, and it also avoids confusion with another class of obligations which have also been called implied contracts. This latter class consists of obligations arising from mutual agreement and intent to promise but where the agreement and promise have not been expressed in words. Such transactions are true contracts and have sometimes been called contracts implied in fact. 1 Williston Contracts, § 3 (3d Ed. 1957)" [Footnotes omitted.]

In the light of the above definitions, it must be concluded that the obligation of the United States on the endorsement of a check or money order, in cases like that at bar, is an implied-in-law contract of the type which is excluded from jurisdiction under the provisions of the Tucker Act. Express contracts and implied-in-fact contracts are agreements of a type wherein the assent of the Government to be sued is indirectly manifested. But a contract implied in law is not the same, and imports a contractual obligation in the absence of intention to be bound. To permit suit on such contracts detracts from the principles that the United States cannot be sued without its consent and that the consent must be express and not implied. Barefield v. Byrd (C.A.5) 320 F.2d 455, cert. denied 376 U.S. 928, 84 S.Ct. 675, 11 L.Ed.2d 624. It is clear that the obligation imposed upon an endorsement by the express provision of Missouri state law purports to be enforceable by operation of that law, without regard to the consent or intent of the party making the endorsement. This could nowhere be more clear than in the case at bar, wherein the intention of the District Director of Internal Revenue, in endorsing checks and money orders submitted in payment of tax claims, cannot in most instances be to guarantee an endorsement which he has no time to check into. Holding the Government liable on transactions in which money due them has been paid will probably result only in holders and subsequent endorsers finally satisfying themselves at the expense of the Government rather than of the wrongdoer. Such a doctrine of unjust enrichment does not apply against the Government. This was made clear in the case of J. C. Pitman & Sons, Inc. v. United States, 317 F.2d 366, 161 Ct.Cl. 701. In that case, one corporation paid the taxes of another corporation having the same stockholders, officers and directors under a mistake of fact that "an agreement had been made with the Internal Revenue Service that legally obligated plaintiff to make payment." 317 F.2d at 367. The Court of Claims, after considering the distinction between a contract implied in fact and one implied in law ("In other words, a contract implied in fact is *a promise implied* by the law. By way of contrast, a contract implied in law is *an obligation imposed* by the law." 317 F.2d 368 [Emphasis in original.]), concluded as follows:

> "In the instant case it would be quite simple to be enticed, by certain language dredged from the record, into relegating the case into one category of implied contract or the other, depending upon whether the language were suggested by plaintiff or defendant. To do so, however, would be to permit ourselves to jump to the conclusion while being drawn away from the clear facts of the case. Clearing away the verbiage, it is apparent that the success of plaintiff's claim rests on its ability to bring the case within the scope of one of two groups of cases

in which this court has granted relief upon an implied contract.

"Typical of the first group relied upon by plaintiff is United States v. State Nat. Bank, 96 U.S. 30, 24 L.Ed. 647 (1877). In that case the cashier of a United States Subtreasury in Boston engaged in a fraud upon the plaintiff to conceal the fact that he had embezzled a large amount of Federal money. The Supreme Court held that where the money of an innocent person is received by the United States by means of a fraud to which its agent was a party, such money cannot be held against the claim of the wronged party. The fraud of the agent was the essential element because it was that fraud which constituted such duress upon the money of the plaintiff as to render his payments involuntary. A second type of case in which this court has taken jurisdiction is illustrated by Kirkendall v. United States, 31 F.Supp. 766, 90 Ct.Cl. 606 (1940), where the Government illegally seized the plaintiff's money and applied it to the tax liability of another. In that instance the element of seizure by the Government supplied the necessary amount of property duress to take the case out of the general rule. The court said:

'When the Government has *illegally* received money which is the property of an innocent citizen * * *, there arises an implied contract on the part of the Government to make restitution * * * and this court has jurisdiction to entertain the suit.' [Kirkendall v. United States, 31 F.Supp. at 769, 90 Ct.Cl. at 613.] [Emphasis added.]" 317 F.2d at 369.

The Court then went on to state that the Internal Revenue Service could not be charged with notice that the payment was mistakenly made:

"Plaintiff insists that the Internal Revenue Service was on notice that plaintiff paid the tax liabilities of the sales corporation under a mistaken conception of its duty. This assertion is made on the strength of Mr. Cunningham's transmittal letters, accompanying the plaintiff's payment checks, which stated that the checks were in payment of the sales corporation's liability. We have examined these letters and checks carefully and find nothing therein that would be sufficient to put defendant on notice that plaintiff was not making a volunteer payment, especially in view of the other facts in evidence. For that reason we cannot possibly equate this case to those upon which plaintiff relies. To do so would place an impossible burden upon the routines of the Internal Revenue Service, for we have the impression that the payment of one's taxes by another is not an unusual occurrence.

"To hold the defendant liable for the alleged fraud or misconduct of an attorney of the opposite party in the selection of which it had no part, would necessitate a much stronger factual showing of full notice or knowledge on the part of the Government, or participation on the part of an agent of the Government, or some other special circumstances not evident here." 317 F.2d 369–370.

The principles of *Pitman* apply to the case at bar, inasmuch as the fraud, if any, was committed by an agent of the plaintiff. Further, in view of the foregoing, it is obvious that, in view of the Internal Revenue Service's special circumstances, its endorsement of a negotiable instrument such as a check or money order must be deemed only an implied-in-law contract. Therefore, it must be concluded under the principles and authorities cited above, that the third-party complaint against the United States must be dismissed for lack of federal jurisdiction under Section 1346 (a) (2) of Title 28, United States Code.

■ In opposition to this conclusion the Federal Reserve Bank of St. Louis places reliance upon the principle set down in Borserine v. Maryland Casualty Co. (C.A.8) 112 F.2d 409, wherein it was

held that an endorsement was a written promise to pay money:

"There is persuasive authority that in Missouri a suit upon an endorsement of a check is an action upon a writing for the payment of money. Home Ins. Co. v. Mercantile Trust Co., 219 Mo. App. 645, 284 S.W. 834. The Casualty Company, as has already been pointed out, seeks to enforce the rights and remedies of its insured against Borserine under his endorsements. The endorsements were writings. The terms of the contracts of endorsement are defined by the laws of Missouri. Borserine's engagements, evidenced by his endorsements, were to pay money if the payee endorsements were not genuine." 112 F.2d at 416.

It is to be noted that that case antedates the enactment of the Uniform Commercial Code in Missouri and that its principles are applied to the end of determining whether statutes of limitations applicable to written instruments for the payment of money govern an endorsement or whether statutes of limitations applicable to other contracts should apply. The case is not a clear precedent for concluding that an endorsement is an express contract under Missouri law. In stating that "the terms of the contracts of endorsement are defined by the laws of Missouri," the *Borserine* case recognizes that the obligation of the endorser is implied in law. Further, it is elementary that the law to be applied in construing Government contracts is federal, not state, law. Woodbury v. United States (C.A.9) 313 F.2d 291; Cate v. United States (S.D.Ala.) 249 F.Supp. 414, 417, and cases therein cited.[1] Third-party plaintiff cites the federal cases of Palomo v. United States (D.Guam) 188 F.Supp. 633; Alliance Assurance Company v. United States (C.A.2) 252 F.2d 529; Shelter Island and Greenport Ferry Company v. United States (E.D.N.Y.) 246 F.Supp. 488; and Security Life & Accident Insurance Co. v. United States (C.A.5) 357 F.2d 145. But those cases are all distinguishable from that at bar in that, chiefly, the Government in all those cases had somehow evinced its intention to be bound by a contract. In *Palomo*, not only did the Government enter into a lease with the plaintiff, but also committed waste on the real property leased. The Court noted that the claim may as well have sounded in tort as well as in contract implied in fact. Similarly, in *Alliance Insurance Company*, goods belonging to the plaintiff disappeared from a Government warehouse due to its negligence. The Court noted in that case: "It is at least as reasonable to imply such a promise [to use due care] here as it is to imply a promise by the government to pay for lands it has tortiously appropriated * * *" 252 F.2d at 532. So the promise was held to be implied in fact, not in law. In Shelter Island and Green-

[1]. In support perhaps of an opposed principle, Third-Party Plaintiff Federal Reserve Bank of St. Louis cites Security Life & Accident Insurance Co. v. United States (C.A. 5) 357 F.2d 145, 148, to the following effect:

"It is customary, where Congress has not adopted a different standard, to apply to the construction of Government contracts the principles of general contract law. Priebe & Sons v. United States, 332 U.S. 407, 68 S.Ct. 123, 92 L.Ed. 32. Such contracts are construed as contracts between private parties. S.R.A. v. State of Minnesota, 327 U.S. 558, 66 S.Ct. 749, 90 L.Ed. 851. The general proposition that the United States may be liable on implied contracts is well settled. 91 C.J.S. United States § 89, p. 170; 54 Am.Jur. 576, United States § 66. The rule that obligations which would be implied against citizens under the same circumstances will be implied against the United States is applicable to the law dealing with landlord and tenant. * * * *"

In respect of the fundamental question of whether the Government is subject to suit, however, distinctly federal standards have been imposed by Congress in Section 1346(a)(2), Title 28, United States Code. State law principles which would permit the United States to be sued in derogation of that section could not be considered in the place of distinctly federal standards of contract construction, having special application to Government contracts.

port Ferry Co. v. United States, *supra*, the plaintiff mistakenly paid excise taxes which were not due the Government because the law under which they were paid had been repealed before payment. And in Security Life & Accident Insurance Co. v. United States, *supra*, the Government remained in possession of the leased premises after the expiration of the lease. All of these cases are within the categories of cases wherein claims might be stated against the Government, as outlined in J. C. Pitman & Sons, Inc. v. United States, *supra*, and, because of the facts upon which they are distinguishable are, by the same token implied-in-fact contract cases rather than cases involving implied-in-law contracts.[2]

For the foregoing reasons, the third-party claim against the United States must be dismissed for lack of Tucker Act jurisdiction.

■ It remains to be considered whether the remainder of this case should be considered and adjudicated by this Court, or whether it should be remanded to the Circuit Court of Jackson County. This Court may retain the case or remand it, in its discretion. Section 1441(c), Title 28, United States Code; 1A Moore's Federal Practice ¶ 0.163 [4.–9], p. 788. In view of the amount involved and other facts and circumstances in this case, it is concluded that it would be more expeditious and economical if this case were remanded to the Circuit Court of Jackson County.

For the foregoing reasons, it is

Adjudged that the Third-Party claim of the Federal Reserve Bank of St. Louis against the United States of America be, and it is hereby, dismissed for lack of jurisdiction and for failure to state a claim against the United States. It is further

Ordered that this cause otherwise be, and it is hereby, remanded to the Circuit Court of Jackson County.

---

2. Third-party plaintiff also cites 10 C.J.S. Bills and Notes § 217(a) and 11 Am.Jur. 2d Bills and Notes § 349, to the effect that the endorsement of a note constitutes "an express written contract." But the same authority also describes the warranties which may attach by reason of the endorsement to be "implied warranties." See 10 C.J.S. Bills and Notes §§ 237–244. Further, in the section of American Jurisprudence 2d relied on by third-party plaintiff, an endorsement is said to be a writing on the back of the instrument "whereby one not only transfers one's full legal title to the paper but likewise enters into a contract, implied if not expressed, dependent upon whether the signing of the name is accompanied by other words, and the particular words used." In the case at bar, the particular form of endorsement used by the I.R.S. can hardly be construed as an express guaranty of the authority of Dean to negotiate the money order. That obli-

gation, rather, is implied by operation of the applicable Missouri statute under state law.

Third-party plaintiff also cites C. F. Harms Co. v. Erie R. Co. (C.A. 2) 167 F.2d 562, as defining an implied-in-law contract in a way which would exclude the contract of the Government in this cause. Third-party plaintiff describes it as "nothing more than a legal relationship created by a court to prevent an injustice." So described, the liability on endorsements which is defined in Krinsky v. Pilgrim Trust Co., 337 Mass. 401, 149 N.E.2d 665, and the other state cases cited in the body of the opinion, meet the description. Further, in *Harms*, Judge Learned Hand subscribed to the proposition that "The important fact is that [implied in law contracts] do not depend upon the obligor's consent; and, indeed, are usually imposed to thwart his purpose." 167 F.2d at 564.