**BOARD OF EDUCATION, EAST MEADOW UNION FREE SCHOOL DISTRICT and Board of Education, Rome City School District and Michael Turner, Martin A. Hollander, Arthur Coultoff, Angelo Gaglione, Christopher Jensen, Robert Kushner and Elaine O'Sullivan, individually as taxpayers and property owners and in their capacities as members of the Board of Education of the East Meadow Union Free School District, Plaintiffs,**

**v.**

**Terrell BELL, Secretary of the United States Department of Education, Defendant.**

**81 CV 1697.**

United States District Court,
E. D. New York.

Jan. 14, 1982.

Dalton, Henoch & Kadin, Hempstead, N. Y. by Jack I. Slepian, New York City, for plaintiffs.

J. Paul McGrath, Asst. Atty. Gen., Washington, D. C., Edward R. Korman, U. S. Atty., Brooklyn, N. Y., Brook Hedge, David M. Glass, Attys., Dept. of Justice, Civil Division, Washington, D. C., for defendant.

## DECISION AND ORDER

BRAMWELL, District Judge.

Defendant Terrell Bell, the Secretary of Education (the "Secretary") has moved this Court for an Order dismissing the instant action pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. For reasons to be set forth herein the motion is granted in part and denied in part.

Plaintiffs in this action, the Board of Education of the East Meadow Union Free School District ("East Meadow") and the Board of Education of the Rome City School District ("Rome") commenced this action in May of 1981 seeking declaratory and injunctive relief preventing implementation of a funding cutback to the "Impact Aid" program administered by the Secretary. *See* 20 U.S.C. § 236 et seq. (1976 & Supp.1981).

## BACKGROUND

The massive industrial mobilization undertaken during World War II had the result of removing from local tax rolls numerous parcels of real property which were being employed as part of the war effort. Congress, in response to the plight of these local school districts confronted with the compound problem of educating additional children relocated within their jurisdiction without the benefit of this additional tax revenue, undertook in 1950 to enact what is commonly known as the Impact Aid Program. *See* Public Law 874, 64 Stat. 1100 (Act of September 30, 1950), *codified at* 20 U.S.C. § 236 et seq. (1976 & Supp.1981). The stated purpose of the legislation was to help relieve the increased financial burden of educating such children by providing "federal assistance to those areas which are or may become overburdened by reason of increased federal activities." 1950 *U.S. Code Cong.Serv.* 4014, at 4015; *see also* the declaration of policy contained in 20 U.S.C. § 236; *Hergenrether v. Hayden*, 295 F.Supp. 251, 252 (D.Kan.1968).

Pursuant to this statutory mandate, certain local education agencies ("LEAs") become eligible to receive annual payments from the Secretary. *See* 20 U.S.C. § 240(b).[1] In order to become eligible, the LEA must provide a free public education to at least 400 children who come within the scope of either 20 U.S.C. § 238(a) ("Category A Children") or 20 U.S.C. § 238(b) ("Category B Children"). *See* 20 U.S.C. §§ 238, 244(1) and 244(6). Generally speaking, Category A Children are children whose parents both live and work on federal property and Category B Children are children whose parents either live or work on federal property. The exact dollar amount of aid is a function of the respective number of Category A and B Children to which it provides a free public education. *See* 20 U.S.C. § 238(d)(1)(A).

Under the Impact Aid Program, plaintiffs East Meadow and Rome, both of them being LEAs, have received, over the past twenty years, annual sums totaling in excess of $500,000 and $1,000,000 respectively. *Amended Complaint* ¶ 16. East Meadow is charged with the legal responsibility for educating at least 400 eligible children while the figure for Rome is 975. *Id.*

In January of 1981, as part of its proposed 1982 fiscal budget, the Carter Administration recommended that the appropriation for the Impact Aid Program be sub-

---

1. The Secretary of Education makes these payments as successor to the Commissioner of Education. *See* 20 U.S.C. § 240(b); 20 U.S.C. § 3441(a)(1).

stantially reduced by limiting payments of Impact Aid to only those LEAs where more than 20% of the students were Category A Children. *See* H.Doc. 97–1 (97th Cong., 1st Sess.) at 207, 211. In March of 1981, the Reagan Administration expressly adopted the Carter Administration proposal on Impact Aid. *See* H.Doc. 97–26 (97th Cong., 1st Sess.) at 67.

On December 15, 1981 President Reagan signed a continuing resolution which reduced the Impact Aid appropriation from approximately $825 million to $412.8 million. *See* House Joint Resolution 370 (97th Cong., 1st Sess.), § 142(a). The resolution also contained an allocation formula whereby the Secretary is to pay LEAs 90% of the amount of Impact Aid they received in fiscal 1981 on behalf of Category A Children. *Id.* at § 117. In addition, it directs the Secretary to pay certain LEAs 75% of the amount they received in fiscal 1981 on behalf of Category B Children with certain others to receive 45% of that amount. *Id.*[2]

Plaintiff school districts, both threatened with the loss of such funding, commenced this action requesting both declaratory and injunctive relief preventing the funding cutoff. *Amended Complaint* ¶ 20, ¶¶ 1 and 2 of Wherefore Clause. For a first cause of action, they assert that an implied contract exists between the Secretary and themselves. *Id.* at ¶ 19. For a second cause of action, they assert that inasmuch as they and their taxpayers will be forced to foot the bill for educating the federally connected after the budget cut, they are being deprived of property without due process of law in violation of the Fifth Amendment to the Constitution. *Id.* at ¶ 23. In redress they request that the Secretary be enjoined from cutting off the funds, or, in the alter-

native, that they be relieved of the legal responsibility of educating the affected children. *Id.* ¶ 2 of Wherefore Clause.

In July of 1981, defendant moved to dismiss the action for failure of subject matter jurisdiction and failure to state a claim upon which relief can be granted under Fed.R.Civ.Pro. 12(b)(1) and 12(b)(6).[3] After careful consideration, the court finds that inasmuch as plaintiffs purport to state a cause of action in implied contract against the defendant in his official capacity, they state a claim over which this Court has no subject matter jurisdiction and is accordingly constrained to dismiss that portion of the action.

*Plaintiffs' Implied Contract Claim*

Plaintiffs, in redress of the wrong they contend they have suffered by virtue of the funding cutback, request from this Court a declaration that "... an *implied contract* exists between the defendant *on behalf of the United States of America* and each of the plaintiffs Board of Education requiring defendant to supply funds..." *Amended Complaint,* ¶ 1 of Wherefore Clause. (Emphasis the Court's) They also request relief "*enjoining* the defendant from terminating such payments to the plaintiffs Board of Education, or, in the alternative, directing the defendant to relieve the plaintiffs Board of Education of the responsibility to educate [the] Children by Defendant's supplying an education..." to them. *Id.,* ¶ 2 of Wherefore Clause. In essence then the plaintiffs' first cause of action is one for declaratory and injunctive relief in support of the continuing payments on an implied contract theory. Plaintiffs East Meadow and Rome state that they have been receiving annual sums in excess of $500,000 and $1,000,000 respectively under the program.

---

**2.** In view of the President signing the further continuing resolution on December 15, 1981, the Secretary has dropped his opposition to the suit as being one prematurely brought and hence unripe for decision. *See* Letter of David M. Glass to the Court dated December 17, 1981. A copy of the resolution was attached to this letter.

**3.** The parties argued the motion before the Court on December 11, 1981. At that time,

they stipulated to permit plaintiffs to file an amended complaint adding seven individual taxpayers as plaintiffs. Plaintiffs' motion was made in response to defendants contention that plaintiff school district did not have standing either in their individual or representative capacity to assert the Fifth Amendment claim. *See e.g., Massachusetts v. Mellon,* 262 U.S. 447, 485–86, 43 S.Ct. 597, 600, 67 L.Ed. 1078 (1923).

*Id.* at ¶ 16. Because the gravamen of their action is essentially one in contract against an officer of the United States in his official capacity the issue of sovereign immunity looms large as a preliminary matter. It is to this issue that the Court now turns.

It is beyond cavil that the United States, as the sovereign, is wholly immune from suit absent its consent to be sued. *See United States v. Sherwood,* 312 U.S. 584, 586, 61 S.Ct. 767, 769, 85 L.Ed. 1058 (1941). Congress, via the "Tucker Act", 24 Stat. 505 (1887), specifically undertook to waive such sovereign immunity only under very limited circumstances including an action in contract brought against the United States. *See United States v. Sherwood, supra* at 586–87, 61 S.Ct. at 769–70. *See also Glidden Co. v. Zdanok,* 370 U.S. 530, 556–557, 82 S.Ct. 1459, 1475–1476, 8 L.Ed.2d 671 (1962); *Estate of Watson v. Blumenthal,* 586 F.2d 925, 929 (2d Cir. 1978). The Tucker Act, codified at 28 U.S.C. §§ 1346(a)(2) and 1491, vests original concurrent jurisdiction in the Federal District Courts and the Court of Claims of all contractual claims against the United States where the matter in dispute is less than $10,000 and exclusive original jurisdiction in the Court of Claims for all such contractual claims exceeding this amount. More specifically, 28 U.S.C. § 1346(a)(2) provides in pertinent part that:

(a) The district courts shall have original jurisdiction concurrent with the Court of Claims, of: (2) [a]ny . . . civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States . . .

Section 1491 goes on to provide that:

The Court of Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States . . .

A long line of decisions construing the import of the term "implied contract" as used in the foregoing sections of the Tucker Act have taken the position that the term contemplates only those contracts implied in fact, not those implied in law, the so-called quasi contracts, the difference of course being that a contract implied in law or quasi contract is really not a contract at all but rather a legal fiction employed by a court in pursuit of an equitable remedy designed to prevent the unjust enrichment of one party at the expense of another whereas a contract implied in fact is one where mutual assent is indeed discernable from the parties' conduct notwithstanding the absence of specific words to that effect. *See Restatement of Contracts 2nd* §§ 4, 19 (1979); *Calamari and Perillo on Contracts* § 1–12 (1977 ed.) *See, e.g. Hatzlachh Supply Co., Inc. v. United States,* 444 U.S. 460, 465 at n.5, 100 S.Ct. 647, 650 at n.5, 62 L.Ed.2d 614 (1980); *Alabama v. United States,* 282 U.S. 502, 507, 51 S.Ct. 225, 226, 75 L.Ed. 492 (1931); *Goodyear Tire and Rubber Co. v. United States,* 276 U.S. 287, 292–93, 48 S.Ct. 306, 307, 72 L.Ed. 575 (1928); *United States v. Minnesota Mutual Investment Co.,* 271 U.S. 212, 217, 46 S.Ct. 501, 502, 70 L.Ed. 911 (1926); *Hill v. United States,* 149 U.S. 593, 598, 13 S.Ct. 1011, 1013, 37 L.Ed. 862 (1893); *Cleveland Chair Co. v. United States,* 557 F.2d 244, 246 (Ct.Cl.1977); *Barnett v. United States,* 397 F.Supp. 631, 638 at n.6 (D.S.C.1975).

Defendant takes the position that if a contract exists at all it must, by virtue of the character of the parties' relationship over the years, be one implied in law and hence not properly cognizable under the Tucker Act. *Defendant's Memorandum in Support of Motion to Dismiss* at 9–10; *Defendant's Reply* at 8–9. More specifically, he points to the requirement that plaintiffs reapply for the Impact Aid on an annual basis as evidencing an intent on the Secretary's part not to be bound on a perpetual basis. *Defendant's Reply* at 9.

Plaintiffs, on the other hand, point to their agreement to provide a free public education to the affected children and to comply with the applicable regulations in

consideration of the Impact Aid payments as clearly evidencing an intention on the part of the defendant to be bound. *Plaintiffs' Memorandum in Opposition* at 9–10. They go on to cite several cases which they contend are analogous to the one at hand in which the existence of contracts with the United States was found. *See Lemon v. Bossier Parish School Board,* 240 F.Supp. 709 (W.D.La.1965), *rehearing den.,* 240 F.Supp. 743, *aff'd,* 370 F.2d 847 (5th Cir.), *cert. den.,* 388 U.S. 911, 87 S.Ct. 2116, 18 L.Ed.2d 1350 (1967); *United States v. County School Board, Prince George County, Virginia,* 221 F.Supp. 93 (E.D.Va.1963); *United States v. Bossier Parish School Board,* 220 F.Supp. 243 (W.D.La.1963), *aff'd,* 336 F.2d 197 (5th Cir. 1964).

■ The Court, after careful review of these cases as well as the pleadings and exhibits to date, finds that the contract plaintiffs vie for, if it exists at all, would have to be one implied in law and as such not cognizable within the limited jurisdiction vested by the Tucker Act in the District Courts and the Court of Claims.

Again, a contract implied in fact is one where the parties mutual intention to be bound is manifested not by words, but by actions or conduct. *See Restatement 2nd, supra.* In stark contrast, the so called contract implied in law or quasi contract is not a contract at all as there exists no such mutual manifestation of assent. Rather, it is a tool of equity employed by a court in pursuit of a just allocation of cost and risk among those who act without the benefit of an agreement, express or implied. *See Calamari & Perillo, supra.*

Where an officer of the United States becomes involved in his official capacity, the distinction assumes a role of critical significance. This is the case because the assent to a contract manifested in an express or implied in fact situation is also an indirect manifestation of its waiver of sovereign immunity and conversely its consent to be sued. *See Stewart Sand and Material Co. v. Southeast State Bank,* 318 F.Supp. 870, 874 (W.D.Mo.1970). The contract implied in law, to the extent it represents a

situation in which this critical element of assent is missing, presents a dramatically different situation for purposes of the Tucker Act. Here no such indirect manifestation of consent to be sued exists. To permit suit against the sovereign in such a situation "... detracts from the principles that the United States cannot be sued without its consent and that consent must be express and not implied." *Id.*

In the case at hand, there can be no serious doubt that an express contract does not exist. Indeed, plaintiffs themselves characterize any contract which might exist as one which would have to be implied. *Amended Complaint* at ¶ 19, Wherefore Clause, ¶ 1.

Plaintiffs' reliance on the *Lemon, Prince George County,* and *Bossier Parish* cases as demonstrating the existence here of a contract implied in fact is misplaced. As defendant quite correctly indicates, these cases, unlike the one at hand, all dealt exclusively with *express* long-term contracts to which the United States was a party. These cases involved construction grants to the respective school districts whereby the latter agreed to certain rules and regulations barring discrimination in exchange for financial assistance in constructing schools. *See* 20 U.S.C. § 636 et seq. They were one-time contracts dealing exclusively with the sharing by the United States of large capital expenditures. By contrast, plaintiffs in the case at hand were the beneficiaries of funds intended to help defray the recurring operating expense of educating the federally connected children. On this point, the Court finds of controlling significance the fact that in order to become eligible for Impact Aid, the plaintiffs were required to reapply each year for the funds. *Affidavit of Dr. Martin T. Walsh* ¶ 3. This fact, without more, evinces an unmistakable intent on the part of defendant not to be bound in perpetuity. While it may be true that during each discrete annual period, the parties were indeed under an express contractual obligation to live up to their respective portions of the bargain, this is something quite different and apart from

an implicit obligation to renew such divisible agreements in perpetuity. Accordingly, the Court is of the opinion that aside from his duty to live up to his expressly defined obligation under each annual agreement, the Secretary is and can be under no obligation to reexcute the agreement each year. For this reason, the existence of a contract implied in fact over which this Court or the Court of Claims would have jurisdiction cannot properly be found. *See* 28 U.S.C. §§ 1346(a)(2). and 1491.[4]

At best, the contract for which plaintiffs contend would have to be one implied in law premised on plaintiffs' reliance on the defendant's Impact Aid payments over the past twenty years. Even here, the plaintiffs' argument might well fall far short of the mark as they would be required to demonstrate an element of unjust enrichment on defendant's part by virtue of the funding cutoff. *See, e.g., Calamari and Perillo, supra; see also Hill v. Waxberg,* 237 F.2d 936, 939 (9th Cir. 1956). This Court however, need not express an opinion on this as it finds itself without the power to resolve the issue of the existence of a contract implied in law. *See Hatzlachh Supply, supra* 444 U.S. at 465 n.5, 100 S.Ct. at 650 n.5 *and cases cited therein.* It accordingly grants defendant's motion to dismiss plaintiffs' contractual claim for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules Civil Procedure.[5]

*The Fifth Amendment Claim*

Plaintiffs, in addition to their contractual claims, assert that by terminating or reducing the Impact Aid to them the Secretary will be depriving them and their taxpayers of their property without due process of law, in violation of the Fifth Amendment to the Constitution (*Amended Complaint* at ¶ 23).

Plaintiffs and defendant apparently do not disagree on the legal standard to be applied in determining the viability of this constitutional claim. Under that standard, which has been enunciated in a series of recent Supreme Court decisions, the reduction of statutory benefits by Congress, if it is free of "invidious discrimination" and is premised on a rational justification, does not constitute a deprivation of property in violation of the Fifth Amendment. *See Hisquierdo v. Hisquierdo,* 439 U.S. 572, 99 S.Ct. 802, 59 L.Ed.2d 1 (1979); *Richardson v. Belcher,* 404 U.S. 78, 92 S.Ct. 254, 30 L.Ed.2d 231 (1971); *Flemming v. Nestor,* 363 U.S. 603, 80 S.Ct. 1367, 4 L.Ed.2d 1435 (1960).

Under that standard, plaintiffs do not contest that the Congressional decision to reduce the resources available under the Impact Aid Program is without a rational basis. *Memorandum in Opposition* at 13. Rather, they go on to characterize the increased tax burden that might be foisted upon the other taxpayers as one that will discriminate against the non-federally connected taxpayers by forcing them to bear the education bill for the federally connected children *Id.* at 14. To this extent they would label the budget cut as being one suffering from "invidious discrimination." *Id.* Defendant, on the other hand, would not so characterize the budget cut at issue

---

**4.** The Court notes that even were it possessed of subject matter jurisdiction under the Tucker Act, it would be powerless to grant the specific relief plaintiffs request. Declaratory or injunctive relief, as distinguished from the award of money damages, are types of relief which are unavailable to a plaintiff in suit brought under the Tucker Act. *See Larson v. Domestic & Foreign Commerce Corp.,* 337 U.S. 682, 703–04, 69 S.Ct. 1457, 1468, 93 L.Ed. 1628 (1949); *Lee v. Blumenthal,* 588 F.2d 1281, 1282 (9th Cir. 1979); *Estate of Watson v. Blumenthal,* 586 F.2d 925, 930 (2d Cir. 1978); *Ostrer v. Aronwald,* 434 F.Supp. 396, 399 (S.D.N.Y.1977).

Quite apart from the character of the contract and the nature of relief that plaintiffs request the court also notes that the matter in dispute, $500,000 for East Meadow and $1,000,-000 for Rome, is well in excess of this Court's jurisdiction which is vested only to the extent of $10,000. *See* 28 U.S.C. §§ 1346(a)(2) and 1491.

**5.** In view of the fact that under the foregoing analysis neither this Court *nor the Court of Claims* would have subject matter jurisdiction over the type of contract for which plaintiffs contend a transfer to the latter court would not be "in the interest of justice", 28 U.S.C. § 1406(c), and this Court accordingly declines to do so.

as it is one, in the Secretary's opinion not drawn "... with an evil eye and an unequal hand" nor one motivated by "a feeling of antipathy" against the taxpayers involved. *New York City Transit Authority v. Beazer*, 440 U.S. 568, 593 n.40, 99 S.Ct. 1355, 1369 n.40, 59 L.Ed.2d 587 (1979).

The standard for dismissal of a cause of action under Rule 12(b)(6) is a stringent one. Indeed, the motion should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). In view of this standard and of the strong policy against adjudicating a plaintiffs claim on anything less than a full and vigorous litigation of the merits, this Court does not feel that the appropriate circumstances for dismissal of plaintiffs' constitutional claim under Rule 12(b)(6) have been presented by defendant.

The parties, on this claim, appear to differ only on factual issues with the "invidious discrimination" standard being undisputed. In view of this, a full and unrestricted development of the record might well develop those salient facts which either directly or indirectly might support plaintiffs' claim of invidious discrimination. The record at this preliminary pre-answer stage however, is not sufficiently developed one way or the other. In any event, it certainly does not appear, at this stage of the proceedings, that plaintiffs, under no set of circumstances will be able to state a claim upon which relief can be granted. *See Conley v. Gibson, supra.* Accordingly, defendant's motion to dismiss plaintiffs' second cause of action under Rule 12(b)(6) of the Federal Rules of Civil Procedure is hereby DENIED.

IT IS SO ORDERED.